Argued and submitted January 5, decisions of Court of Appeals reversed;
orders of Board of Parole and Post-Prison Supervision reversed, and
cases remanded to Board of Parole and Post-Prison Supervision
for further proceedings December 23, 2010

DONALD SEVERY,
*Petitioner on Review /
Cross-Respondent on Review,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent on Review /
Cross-Petitioner on Review.*

(CA A132525; SC S057031, S057516)

STEVEN R. WILSON,
*Petitioner on Review /
Cross-Respondent on Review,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent on Review /
Cross-Petitioner on Review.*

(CA A132856; SC S056674)

(Consolidated or argument and opinion)

245 P3d 119

Ryan T. O'Connor, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review/cross-respondent on review Donald Severy. With him on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Andy Simrin, Portland, argued the cause and filed the brief for petitioner on review/cross-respondent on review Steven R. Wilson.

Denise G. Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, Salem, argued the cause and filed the brief for respondent on review/cross-petitioner on review. With her on the brief was John R. Kroger, Attorney General.

GILLETTE, J.

## GILLETTE, J.

These two parole eligibility cases have been consolidated in this court for purposes of opinion. They concern the scope of authority of the Board of Parole and Post-Prison Supervision (board) to consider for parole persons who had been convicted of aggravated murder and sentenced to life in prison with a minimum of 30 years imprisonment, but who, 20 years later, are found by the board to be capable of rehabilitation within a reasonable period of time. In *Janowski / Fleming v. Board of Parole*, 349 Or 432, 446, 245 P3d 1270 (2010), we hold that the board has the authority to override a prisoner's 30-year mandatory minimum sentence for aggravated murder and to release the prisoner after 20 years in prison on a finding that the prisoner is capable of rehabilitation within a reasonable period of time. We also hold that, in such an event, the board must use the applicable matrix rules in effect at the time of the commission of the underlying offenses to determine when the prisoner should be released. *Id.* at 453. The two cases now before us involve an additional circumstance not present in *Janowski / Fleming*, *viz.*, each prisoner was sentenced by a trial court to *two consecutive* life sentences with 30-year mandatory minimum terms of imprisonment for aggravated murder. Nonetheless, each prisoner, after 20 years of imprisonment on the first of the prisoner's consecutive sentences, was found by the board to be capable of rehabilitation within a reasonable period of time.

The Court of Appeals concluded that the outcome of these cases was controlled by this court's decision in *Norris v. Board of Parole*, 331 Or 194, 13 P3d 104 (2000), *cert den*, 534 US 1028 (2001). Given that decision, the Court of Appeals held that when a prisoner has served 20 years of the first of two consecutive life sentences with 30-year mandatory minimum terms of imprisonment for aggravated murder and the board finds that the prisoner is capable of rehabilitation within a reasonable period of time and consequently converts the terms of the prisoner's confinement to life with the possibility of parole, that conversion applies only to the first of the two consecutive sentences. Following this court's decision in *Norris*, the Court of Appeals held that such a prisoner must wait another 20 years before seeking a second rehabilitation

hearing that could result in the conversion of the second sentence. *Wilson v. Board of Parole*, 222 Or App 224, 228, 193 P3d 32 (2008); *Severy v. Board of Parole*, 224 Or App 176, 197 P3d 59 (2008) (affirming per curiam in light of *Norris* and *Wilson*).

Both the board and the prisoners sought review of those decisions, and we allowed their petitions for review. The facts relevant to our disposition of these cases are procedural and are not in dispute. In September 1984, prisoner Severy killed his father and brother in the family home and then set fire to the house to conceal his crimes.[1] In May 1985, a trial court convicted Severy of two counts of aggravated murder and one count of arson. The court imposed two consecutive life sentences, each with a 30-year minimum term of imprisonment, for the aggravated murder convictions, and a further consecutive 10-year mandatory minimum sentence on the arson conviction. In October 1985, the board issued an order setting a matrix range for Severy's crimes of 270 to 376 months' imprisonment. At the same time, the board set a release date in October 2054 for Severy's consecutive 360-month mandatory minimum sentences for aggravated murder and his consecutive 120-month mandatory minimum sentence for arson. In 1990, the board issued an order recalculating the matrix range for Severy's crimes as 222-280 months' imprisonment, but also concluding that it had improperly set a release date when it only should have set a review hearing date and noting that there was no matrix range for those convicted of aggravated murder. No party sought judicial review of that order.

---

[1] As we explain in the text below, Wilson committed his crimes in February 1985. In November 1984, the voters passed an initiative measure amending ORS 163.105 to include the death penalty as a possible sanction for aggravated murder. In addition, among other things, that initiative measure eliminated the preexisting 20-year mandatory minimum sentence that ORS 163.105 (1981) permitted a trial court to impose for certain types of aggravated murder not at issue here, and included other conforming amendments. By proclamation of the governor, that measure took effect on December 6, 1984; accordingly, the 1985 version of ORS 163.105 applies to crimes committed after December 6, 1984. That is, the 1985 version of ORS 163.105 applies to Wilson's case.

Severy committed his crimes in September 1984 and, therefore, the 1981 version of the statute applies to his case. However, because the 1985 amendments to ORS 163.105 do not affect our analysis of Severy's case in any way, we will, for convenience, simply refer to the 1985 version at all times in this opinion.

In February 1985, prisoner Wilson shot and killed his friend's parents.[2] In October 1986, a trial court convicted Wilson of four counts of aggravated murder, merged those four counts into two counts for purposes of sentencing, and then imposed two consecutive life sentences, each with a 30-year minimum term of imprisonment. In March 1987, the board conducted a hearing respecting Wilson's incarceration. It established a matrix range of 240 to 336 months' imprisonment, set a parole release date in December 2044, and sustained Wilson's consecutive 30-year mandatory minimum sentences. As it had in Severy's case, the board later withdrew that part of its order setting a release date as inconsistent with the aggravated murder statute, set a review date instead, and withdrew its calculation of a matrix range on the ground that there was no matrix range for those convicted of aggravated murder. Again, no party sought judicial review of that order.

After Severy and Wilson had been incarcerated for 20 years, each sought and was given a hearing under ORS 163.105(2) (1985),[3] a statute permitting prisoners who had received 30-year mandatory minimum sentences for aggravated murder to petition for a hearing before the board to determine whether they were "likely to be rehabilitated within a reasonable time."[4] At the conclusion of those hearings, the board unanimously found that each prisoner had made the requisite showing of likelihood of rehabilitation. In each case, the board then entered an order converting the terms of the prisoners' confinement on the first of the two consecutive 30-year mandatory minimum sentences to life imprisonment with the possibility of parole, as required by ORS 163.105(3) (1985). And, on the implicit assumption that the prisoners were beginning at that point to serve the second consecutive 30-year mandatory minimum sentence, the board informed both Severy and Wilson that they could petition the board again in 20 years for a change in the terms of

---

[2] Wilson's codefendant is one of the prisoners involved in *Janowski/Fleming*, the companion to this case.

[3] We set out the text of ORS 163.105 (1985) later in this opinion.

[4] Severy's hearing was held in November 2004; Wilson's was held in October 2005.

confinement for their second sentences.[5] Both Severy and Wilson sought administrative review of those orders, arguing, among other things, that ORS 163.105(3) (1985) directed the board to override the judicially imposed mandatory minimum sentence for *both* aggravated murder sentences upon the board's finding that the prisoner was capable of rehabilitation within a reasonable time. The board rejected those arguments.

Both Severy and Wilson sought judicial review of the board rulings in the Court of Appeals, which, as noted, held in each instance that the case was controlled by this court's decision in *Norris*. The board seeks review in Severy's case, arguing that applicable statutes do not permit the board to override the 30-year mandatory minimum sentences for aggravated murder and that the Court of Appeals should not have relied on *Norris* because, in its view, *Norris* was wrongly decided. Severy and Wilson also seek review, contending that the board did have the authority to override the mandatory minimum sentences for aggravated murder, but likewise contending that *Norris* was wrongly decided, albeit in a different way than that argued by the board.

In *Janowski/Fleming*, this court today addresses the issue of the board's authority, under ORS 163.105 (1985), to override a 30-year mandatory minimum sentence and to set a prisoner's eligibility for release on parole after 20 years if it finds that the prisoner is likely to be rehabilitated within a reasonable time. ORS 163.105 (1985) required the trial court to impose a 30-year mandatory minimum sentence for persons who had been sentenced to life imprisonment for aggravated murder. However, it further provided:

> "(2) At any time after 20 years from the date of imposition of a minimum period of confinement pursuant to subsection (1) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether

---

[5] In addition, the board reminded Severy that he must serve his 120-month mandatory minimum sentence on the arson conviction after he is released from incarceration on both aggravated murder convictions.

or not the prisoner is likely to be rehabilitated within a reasonable period of time. * * *.

"* * * * *

"(3) If, upon hearing all the evidence, the board, upon a unanimous vote of all five members, finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release. Otherwise, the board shall deny the relief sought in the petition."

In *Janowski/Fleming*, we hold that that statute does give the board authority to make a prisoner who had been sentenced by a court to a 30-year minimum prison term for aggravated murder eligible for release after he has served 20 years in prison, if it finds that the prisoner is capable of rehabilitation. Based on that holding, we reject the board's contrary argument here.

We therefore turn to the question that is central to these two consolidated appeals: What is the effect of our holding in *Janowski/Fleming* on cases in which a prisoner has been convicted of more than one aggravated murder and in which the trial court ordered the prisoner to serve consecutive sentences of life in prison with 30-year mandatory minimum terms of imprisonment? Because the Court of Appeals concluded that the answer to that question was controlled by this court's earlier decision in *Norris*, and because all parties in this case argue that *Norris* was wrongly decided, we begin with a brief summary of the facts in *Norris* and its principal holdings.

In *Norris*, the prisoner had committed two aggravated murders and one attempted murder in 1978. After he was convicted of those crimes in 1979, the trial court imposed two consecutive life sentences on the aggravated murder counts, each to be served without the possibility of parole for 20 years. (Such sentences were authorized under ORS 163.105(2) (1977).) The court also imposed a concurrent 20-year term of imprisonment on the attempted murder conviction. At the time that Norris committed his crimes, ORS

163.105(3) (1977) permitted a prisoner who had been convicted of aggravated murder under ORS 163.105(2) (1977) to seek a hearing before the board after 15 years of incarceration to determine if he was likely to be rehabilitated within a reasonable period of time. Subsection (4) of that same statute provided that, if the board found that the prisoner was capable of rehabilitation and that the terms of his confinement should be changed to life in prison with the possibility of parole, the board was required to enter an order to that effect.[6]

In 1993, after Norris had been incarcerated for 15 years, he sought and was granted a rehabilitation hearing, and the board found that he was likely to be rehabilitated within a reasonable period of time. The board set a release date for July 2018, after Norris had served the judicially ordered 40 years in prison (*i.e.*, after he had served two consecutive 20-year mandatory minimum terms). Norris petitioned for judicial review in the Court of Appeals.

While judicial review was pending, the board withdrew its order for reconsideration. Ultimately, the board

---

[6] In all respects relevant to our analysis here, ORS 163.105 (1977) was similar to ORS 163.105 (1985), the version in effect at the time that Severy and Wilson committed their crimes. ORS 163.105 (1977) provided:

"(1) When a defendant is convicted of murder defined as aggravated murder pursuant to subsection (1) of ORS 163.095, the court shall order that the defendant shall be confined for a minimum of 30 years without the possibility of parole * * *.

"(2) When a defendant is convicted of murder defined as aggravated murder pursuant to subsection (2) of ORS 163.095, the court shall order that the defendant shall be confined for a minimum of 20 years without the possibility of parole * * *.

"(3) At any time after 20 years from the date of imposition of a minimum period of confinement pursuant to subsection (1) of this section, or at any time after 15 years from the date of imposition of a minimum period of confinement pursuant to subsection (2) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. * * *.

"* * * * *

"(4) If, upon hearing all the evidence, the board finds that the prisoner is capable of rehabilitation and that the terms of his confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect. Otherwise, the board shall deny the relief sought in the petition."

issued an order on reconsideration making two findings. First, it reiterated its finding that Norris was capable of rehabilitation within a reasonable time; consequently, it applied the matrix then in effect and concluded that the appropriate matrix range for both counts of aggravated murder was 20 to 28 years, which was less than Norris's judicially ordered 40-year minimum prison term. Second, it found that it should not alter Norris's minimum term of confinement, because 20 years for each count was the appropriate sanction for Norris's criminal conduct and was necessary for the protection of the public.

Norris renewed his petition for judicial review in the Court of Appeals. Among other things, Norris argued that, because the board had found him to be capable of rehabilitation, the minimum terms imposed by the trial court were "nullified" and the board had to use the matrix system to set a release date. The board, in response, contended that ORS 163.105(4) required it to make *two* independent and coequal findings before it could change the terms of a prisoner's confinement: "(1) that [the prisoner] was capable of rehabilitation *and* (2) that the terms of confinement should be changed to life with the possibility of parole." *Norris*, 331 Or at 200 (emphasis added). Alternatively, the board argued that, even if the issue were unitary and it therefore was required to change the "terms of [the prisoner's] confinement," it still had no authority to override the consecutive, 20-year mandatory minimum sentences. After considering those arguments, the Court of Appeals ruled that a decision by the board that a prisoner was likely to be rehabilitated within a reasonable period of time necessarily included a finding that the terms of confinement must be changed. *Norris v. Board of Parole*, 152 Or App 57, 66, 952 P2d 1037 (1998). However, the court did not go on to direct the board to take any particular action. Instead, it remanded the case to the board for further proceedings. *Id.* at 66-67. Norris then sought review in this court.

This court in *Norris* began by considering what the board was required to find at a rehabilitation hearing under ORS 163.105 (1977) and ultimately held "that the legislature intended that, in a hearing held under ORS 163.105(3) (1977), the Board must find only whether the prisoner is

capable of rehabilitation." *Norris*, 331 Or at 207. The court then turned to consider the effect of that conclusion on Norris, who was subject to two consecutive 20-year mandatory minimum sentences. The court's analysis in that regard was as follows:

> "ORS 163.105(4) (1977) requires the Board to change the 'terms of * * * confinement' to life imprisonment with the possibility of parole. That subsection does not define that phrase. The word 'terms,' as used in the subsection, could refer to the conditions of his confinement. *See Webster's Third New Int'l Dictionary* [unabridged ed 1993] at 2358 (defining 'terms,' in part, as 'conditions'). Looking to ORS 163.105(2) (1977), however, we conclude that the meaning of 'terms of * * * confinement' is clear.

> "ORS 163.105(2) (1977), the subsection under which [Norris] was sentenced, provides the sentence for one murder (a *single* crime): '[w]hen a defendant is convicted of *murder* defined as aggravated murder pursuant to subsection (2) of ORS 163.095 * * *.' (Emphasis added.) ORS 163.105(2) (1977) is specific regarding the sentence for such a murder: 'the court shall order that the defendant shall be confined for a minimum of 20 years without possibility of parole, release on work release, temporary leave or employment at a forest or work camp.' The imposition of that specific sentence eventually may trigger the rehabilitation hearing described in ORS 163.105(3) and (4) (1977). If, at such a rehabilitation hearing, the prisoner proves by a preponderance of the evidence that the prisoner is likely to be rehabilitated within a reasonable period of time, then the Board must change the 'terms of * * * confinement'—that is, the sentence imposed under ORS 163.105(2) (1977) for one aggravated murder—to life with the possibility of parole or work release.

> "Applying that analysis to this case, we conclude that the Board must change the first of [Norris's] life sentences to life with the possibility of parole or work release. [Norris] is entitled to have that change occur retroactively to January 26, 1994, the date that the Board found him to be capable of rehabilitation. On that date, [Norris] began serving his second life sentence with a 20-year minimum term of confinement for his second conviction of aggravated murder. In 2009, 15 years from the date that he began serving that 20-year minimum term, [Norris] may petition for a

rehabilitation hearing, and that hearing also will be governed by ORS 163.105(3), (4), and (5) (1977). Only if the Board again finds that [Norris] is capable of rehabilitation within a reasonable period of time, must the Board change [Norris's] second aggravated murder sentence to life with the possibility of parole and work release. Only at that point would [Norris] become eligible for parole.

"In sum, in a rehabilitation hearing under ORS 163.105 (1977), the only finding that the Board must make is whether the prisoner is capable of rehabilitation. If the Board finds that the prisoner is capable of rehabilitation, then the Board must change the prisoner's aggravated-murder sentence to life with the possibility of parole. In this case, [Norris] received two life sentences without the possibility of parole for 20 years, the second sentence to be served consecutively to the first. Given its finding regarding [Norris's] capability of rehabilitation, the Board should have changed one of those sentences to life with the possibility of parole. [Norris] may petition for a second rehabilitation hearing after he serves 15 years of his second aggravated-murder sentence. ORS 163.105(3) (1977). Because [Norris] is not eligible for parole unless the Board finds him capable of rehabilitation at that second hearing, we express no opinion in this case regarding either the applicability of the matrix or whether the Board erred in its findings in aggravation."

*Norris*, 331 Or at 207-08 (emphasis and ellipses in original).

The board complains that, in the foregoing passage, the court held, without any explanation or analysis, that the prisoner's second mandatory minimum sentence began to run the moment that the board found that he was capable of rehabilitation, and nothing in the statute or its context suggests that result. The board also criticizes that passage for concluding, at one point, that the board's "likely to be rehabilitated" finding means that a prisoner who is subject to two consecutive mandatory minimum sentences is "entitled" to begin serving the second sentence, but stating elsewhere that he merely is "eligible" for parole on such a finding.

The prisoners, for their part, point out that the plain words of ORS 163.105(3) (1977) required the board to conduct Norris's rehabilitation hearing 15 years "from the date of imposition of a minimum period of confinement pursuant to

subsection (2) of this section," and that the trial court had "imposed" both of Norris's consecutive sentences on the same date. Under the plain words of the statute, therefore, the board was required to conduct the rehabilitation hearing for both aggravated murder sentences at the same time. They argue that the court ignored that statutory wording entirely when, in the passage quoted above, it required Norris to wait another 15 years, and to seek a second rehabilitation hearing on the second aggravated murder sentence, before he could become eligible for parole under ORS 163.105 (1977).

In addition to the foregoing criticisms of the court's reasoning in *Norris* (some of which, as we shall explain, we find to be well taken), we observe that the court's analysis seems to have gone astray on another point as well. The court emphasized that, because ORS 163.105(2) (1977) (the subsection under which Norris was sentenced) referred to a "defendant [ ] convicted of *murder*," that statute "provide[d] the sentence for one murder (a *single* crime)." *Norris*, 331 Or at 207 (emphasis by the *Norris* court). The court also stated, "ORS 163.105(2) (1977) is specific regarding the sentence for such a murder." *Id.* From those undisputed points, which have nothing necessarily to do with the appropriate sentence for *multiple* counts of aggravated murder, the court made an illogical leap to the conclusion that a prisoner could receive a rehabilitation hearing under ORS 163.105(3) and (4) (1977) for only the first of two consecutive mandatory minimum sentences. Nothing in ORS 163.105(3) or (4) (1977) supports that conclusion. On the contrary, as discussed, the plain words of ORS 163.105(3) (1977) required the hearing to be held 15 years after the "imposition of a minimum period of confinement," and, as noted, at Norris's sentencing, the trial court "imposed" the minimum period of confinement for each of the two aggravated murders simultaneously.

In addition, the court assumed, without any real analysis, that the phrase "terms of * * * confinement" as used in ORS 163.105(4) meant "the sentence imposed under ORS 163.105(2) (1977) for one aggravated murder." *Norris*, 331 Or at 207. Based on that understanding, the court then concluded that the board "should have changed one of [Norris's] sentences to life with the possibility of parole." *Id.* at 207-08.

As we explain below, we now conclude that that assumption is incorrect.

Although this court makes every attempt to adhere to precedent, in accordance with the doctrine of *stare decisis*, it has, from time to time, found an earlier interpretation of a statute to be so deficient that it has concluded that some reexamination of the prior statutory construction was appropriate. *See, e.g., Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995) (reexamination was necessary because all the stated bases for the decision either did not apply, or were no longer correct because of later statutory enactments, or provided only marginal support for the conclusion); *see also State v. Sandoval*, 342 Or 506, 512-13, 156 P3d 60 (2007) (abrogating earlier case interpreting statute because it did not examine the words of the statute and it relied on irrelevant parts of the legislative history). This is such a case: The court's stated bases for the part of the decision in *Norris* concerning the timing of rehabilitation hearings in circumstances such as those faced by Norris (and Severy and Wilson) do not support its conclusions, are internally inconsistent, and ignore the words of the statute. We therefore abandon them. We turn to an examination of the provisions of ORS 163.105 (1985) without regard to the court's decision in *Norris*, in an effort to discern how the legislature intended to deal with prisoners who had been convicted of more than one aggravated murder and had been sentenced to serve consecutive life sentences with mandatory minimum terms of imprisonment.

For convenience, we repeat the relevant parts of ORS 163.105 (1985) here:

"(1)   When a defendant is convicted of aggravated murder as defined by ORS 163.095, the defendant shall be sentenced to death or life imprisonment pursuant to ORS 163.150. If sentenced to life imprisonment, the court shall order that the defendant shall be confined for a minimum of 30 years without the possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

"(2)   At any time after 20 years from the date of imposition of a minimum period of confinement pursuant to subsection (1) of this section, the State Board of Parole, upon

the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. * * *.

"* * * * *

"(3)   If, upon hearing all the evidence, the board, upon a unanimous vote of all five members, finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release. Otherwise, the board shall deny the relief sought in the petition."

As we observe in *Janowski/Fleming*, subsection (1) is a directive to the trial court; it requires the trial court to order a defendant who has been sentenced to life imprisonment for aggravated murder to serve a minimum of 30 years in prison without the possibility of parole. *Janowski/Fleming*, 349 Or at 440. That is, 30 years is the "minimum period of confinement" that the trial court must impose pursuant to subsection (1). Subsection (2) then describes the timing of rehabilitation hearings as being "any time after 20 years from the *date of imposition of a minimum period of confinement* pursuant to subsection (1) of this section." (Emphasis added.) Under the plain words of that subsection, the trigger for the rehabilitation hearing is the "imposition" of that minimum period of confinement. Only a court "imposes" a sentence in a criminal case.

In the case of defendants Severy and Wilson, who each were tried for and convicted of two aggravated murders that were committed at the same time, the trial court imposed the minimum period of confinement for both convictions at the same time. And, when the trial court ordered those minimum periods of confinement to be served consecutively, the *combined* mandatory minimum sentence became the "minimum period of confinement" imposed pursuant to

subsection (1).[7] Stated another way, the date that a trial court orders a defendant who has been convicted of two or more aggravated murders to serve consecutive 30-year mandatory minimum sentences is the "date of imposition of a minimum period of confinement pursuant to subsection (1)." ORS 163.105(2) (1985). And, because the rehabilitation hearing is to be held "after 20 years from the date of imposition of a minimum period of confinement," it follows that, in cases in which the prisoner simultaneously was ordered to serve more than one consecutive 30-year mandatory minimum sentence under ORS 163.105(1) (1985), the prisoner is entitled to a rehabilitation hearing on the combined sentences—his entire "minimum period of confinement"—after he has served 20 years in prison.

Subsection (3) then brings a different phrase into play. Under that subsection, if the board unanimously finds that a prisoner is "capable of rehabilitation," then the board "shall convert *the terms of the prisoner's confinement* to life imprisonment with the possibility of parole." (Emphasis added.) In *Norris*, this court acknowledged that the word "terms" in the phrase "terms of * * * confinement" could refer to the *conditions* of the prisoner's confinement, but instead held that the phrase meant the length of the period of confinement that the trial court had imposed for one aggravated murder. 331 Or at 207. Apparently, the court came to that conclusion solely because the trial court's imposition of a 30-year mandatory minimum sentence under ORS 163.105(1) (1977) triggered the rehabilitation hearing referred to elsewhere in the statute. *See Norris*, 331 Or at 207 (suggesting that conclusion). However, that analysis ignores the fact that, in subsection (2), when the statute specifically referred to the sentence that the trial court imposed for aggravated murder, it used the phrase "*period* of confinement." The fact that the legislature chose to use a different

---

[7] The board's rules at the time that Severy and Wilson committed their crimes were consistent with that interpretation. They required the board to treat consecutive sentences, including minimum sentences, as a unitary term of imprisonment. OAR 255-35-022(5) (1982) provided:

"For purposes of establishing a parole release date, the Board shall consider the summed ranges for consecutive sentences as a single unified range. Any minimum sentences shall be considered as a single unified minimum."

phrase—*viz.*, *"terms* of * * * confinement"—in subsection (3) suggests that it intended to convey a different meaning. In this case, we think that the phrase "terms of * * * confinement" in subsection (3) includes any conditions applicable to a period of confinement, including a condition stating that parole or any other form of release was prohibited for a mandatory minimum period and a requirement that certain periods of confinement be served consecutively. It does not refer to the sentence that the trial court imposed for one of multiple convictions for aggravated murder.

The foregoing analytical point is bolstered by the fact that the issue to be decided at the rehabilitation hearing is whether the prisoner has met his burden to prove that he is likely to be rehabilitated within a reasonable period of time. ORS 163.105(2) (1985). That determination pertains only to personal characteristics of *the prisoner*; it does not focus either on the offenses that the prisoner committed or on which of multiple consecutive sentences he was serving when the hearing occurred. If the board finds that a prisoner is likely to be rehabilitated within a reasonable time, it defies logic to conclude that the legislature intended the board to require the offender to make that precise showing again 20 years later. We hold that, in requiring the board to convert the "terms of the prisoner's confinement" to life with the possibility of parole, ORS 163.105(3) (1985) required the board to convert the prohibition on eligibility for parole (for both consecutive sentences for aggravated murder) to the possibility of parole.

So much for *"terms* of confinement." We turn now to the separate issue of *"period* of confinement." In Severy's and Wilson's cases, the trial court imposed consecutive sentences of life in prison, each with a 30-year period to be served without the possibility of parole. After Severy and Wilson each had been incarcerated for 20 years, the board unanimously found that each was capable of rehabilitation. The board then was required to convert both of Severy's and Wilson's sentences to life in prison with the possibility of parole. That "conversion" necessarily eliminated both 30-year mandatory minimum sentences, but it did not necessarily alter the consecutive nature of the prisoners' sentences that remain in force. In sum, we conclude that this court erred in *Norris* in

holding that a prisoner sentenced to consecutive life sentences with 30-year minimums must wait until he or she has served 20 years on the second life sentence before the board may decide whether he is capable of rehabilitation.

As noted, when the board issued the orders regarding both Severy and Wilson, it properly assumed that this court's decision in *Norris* correctly stated the controlling law. Accordingly, the board did not consider how its decision would affect the second mandatory minimum that the trial court had imposed on Severy and Wilson. More specifically, the board did not have occasion to consider whether each prisoner would still have to serve a reduced mandatory minimum sentence of 20 years for the second offense or whether the effect of its finding that each prisoner is capable of rehabilitation meant that the matrix applied immediately. Beyond that, the board did not have occasion to consider, if the matrix applies immediately, how the second mandatory minimum should be factored, if at all, into the matrix determination. Perhaps we could resolve some of those issues in advance of the board's resolution of them. But we think that the more prudent course is to remand these consolidated cases to the board so that it may address those questions in the first instance. The board's orders resolving those issues may limit, clarify, or sharpen the issues for any further review.

The decisions of the Court of Appeals are reversed. The orders of the Board of Parole and Post-Prison Supervision are reversed, and the cases are remanded to the Board of Parole and Post-Prison Supervision for further proceedings.