Argued and submitted July 21, 2014, affirmed October 14, 2015, petition for review denied May 26, 2016 (359 Or 667)

DONALD M. SEVERY,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A152340

360 P3d 682

Jason E. Thompson argued the cause for petitioner. With him on the brief was Ferder Casebeer French & Thompson, LLP.

Matthew J. Lysne, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

**NAKAMOTO, J.**

Petitioner seeks review of an order of the Board of Parole and Post-Prison Supervision setting his projected parole release date for February 2022 after remand by the Oregon Supreme Court in *Severy/Wilson v. Board of Parole*, 349 Or 461, 478, 245 P3d 119 (2010). Of the eight assignments of error that petitioner raises on review, we reject the third, seventh, and eighth without discussion. On administrative review before the board, petitioner failed to raise the issues he seeks to have us address in his first and fifth assignments of error; accordingly, we conclude that those issues are not cognizable on judicial review. Thus, we address the merits of petitioner's second, fourth, and sixth assignments, in which petitioner challenges the process that the board employed on remand and two 36-month upward variations on his prison term.

In his second assignment of error, petitioner asserts that the board lacked the authority to conduct a prison term hearing in 2011; as we explain below, that position rests on a false premise. In his fourth assignment of error, petitioner argues that the board lacked authority to use a victim's age as an aggravating factor to support an upward variation on petitioner's prison term because that factor applies only when the offender takes advantage of the victim's vulnerability. We agree with the board that no such requirement exists under the applicable matrix rules concerning aggravating factors and that the board adequately explained its application of the factor. Finally, we reject petitioner's sixth assignment of error, in which he argues that the board lacked a sufficient number of board members to impose two upward variations on petitioner's matrix range. Accordingly, we affirm the board's order.

## I.  FACTS

The background facts are procedural and undisputed. In 1984, petitioner murdered his father and brother while they were asleep and then set fire to their house to conceal his crimes. In 1985, a trial court convicted petitioner of two counts of aggravated murder and one count of arson. The court imposed two consecutive life sentences, each with a 30-year minimum term of imprisonment,

for the aggravated murder convictions and a consecutive 10-year mandatory minimum sentence for the arson conviction.

In October 1985, the board conducted a prison term hearing. A prison term hearing, also known as an "initial parole hearing," is held either to establish a prison term by setting a parole consideration hearing date or a projected parole release date, or else to defer setting a parole release date. ORS 144.120 (1981), *amended by* Or Laws 1985, ch 283, § 2. Applying the substantive law in effect at the time that petitioner committed the offenses, the board issued an order sustaining petitioner's minimum sentences and setting a matrix range[1] for petitioner's crimes of 270 to 376 months' imprisonment based on a crime severity of category 7, subcategory 1. The board added a category 8 crime severity rating in 1988, and the matrix ranges for that category were the same as the ranges for category 7, subcategory 1, in earlier matrices. *Compare* OAR ch 255, Ex C (July 1, 1988), *with* OAR ch 255, Ex C (May 31, 1985). At the same time, the board set a projected parole release date in October 2054 for petitioner's consecutive 360-month mandatory minimum sentences for aggravated murder and his consecutive 120-month mandatory minimum sentence for arson.

In 1988, petitioner filed for administrative review of the board's order. The board granted petitioner's request for review. "Sometime after 1988, the [b]oard received advice from the Attorney General that the [b]oard did not have the authority to set a parole release date for a prisoner sentenced for aggravated murder until the [b]oard determined, pursuant to ORS 163.105[(3) (1981), *amended by* Oregon Laws 1985, chapter 3, section 1], that the prisoner was capable of rehabilitation." *Severy v. Board of Parole*, 318 Or 172, 175, 864 P2d 368 (1993). The board could not make such a

---

[1] Individuals convicted of aggravated murders committed in 1984 were assigned a matrix range. *See former* OAR 255-35-010 (May 19, 1982). Under the matrix system, "for any particular offender, the trial court imposed an indeterminate sentence of a specified maximum duration, and the board determined the actual duration of imprisonment by its parole release decision." *Engweiler v. Board of Parole*, 343 Or 536, 540-41, 175 P3d 408 (2007) (internal citations omitted).

determination for a prisoner convicted of aggravated murder under ORS 163.095(1) (1981), *amended by* Oregon Laws 1991, chapter 337, section 12, until the board conducted a rehabilitation hearing. *Id.* Accordingly, in 1990, the board held an administrative review hearing and, as a result, recalculated petitioner's matrix range to 222 to 280 months, rescinded his October 2054 parole release date, and set a date for a parole review hearing—a date for a future hearing at which the board could set a release date. *Severy v. Board of Parole*, 118 Or App 585, 587, 848 P2d 1214, *aff'd*, 318 Or 172, 864 P2d 368 (1993).[2] Petitioner did not seek judicial review of that order. *Severy/Wilson*, 349 Or at 465.

In 2004, the board held the required murder review hearing, pursuant to ORS 163.105(3) (1981), to determine whether petitioner was likely to be rehabilitated within a reasonable time. The board concluded that he was, and it changed the term of his confinement on his first sentence for aggravated murder to life in prison with the possibility of parole or work release. *Severy/Wilson*, 349 Or at 466. The board informed petitioner that he could petition the board again in twenty years for a change in the terms of his second aggravated murder sentence. *Id.* The board did not set a projected parole release date. *See id.* Petitioner challenged the board's 2004 decision.

On review, the Supreme Court held that the second 30-year minimum aggravated murder sentence was overridden by the board's finding that petitioner was likely to be rehabilitated within a reasonable time. *Id.* at 477-78. In other words, at the 2004 murder review hearing, the board should have changed the term of his confinement to life in prison with the possibility of parole or work release on both, not just one, of petitioner's sentences for aggravated murder. The court noted, however, that the conversion of prisoner's confinement to life imprisonment with the possibility of parole "did not necessarily alter the consecutive nature of * * * [petitioner's] sentences that remain in force." *Id.* at 477.

---

[2] In 1989, *former* OAR 255-32-005 (Nov 1, 1989) was amended to provide the proper procedure: "A person convicted of Aggravated Murder under ORS 163.095 shall receive a prison term hearing under the provisions of Division 30 of these rules. <u>A review date congruent with the minimum terms set forth in [OAR] 255-32-010 shall be set rather than a parole release date.</u>" (Underscoring in original.)

Accordingly, the court remanded the case to the board for "further proceedings," *id.* at 478, directing the board to "use the applicable matrix rules in effect at the time of the commission of the underlying offenses to determine when * * * [petitioner] should be released." *Id.* at 464 (citing *Janowski/Fleming v. Board of Parole*, 349 Or 432, 453, 245 P3d 1270 (2010) (issued on the same day as *Severy/Wilson* and involving similar issues)).

Thus, on remand from the Supreme Court, the board was charged with determining petitioner's prison term. The board elected to carry out the holdings in *Severy/Wilson* and *Janowski/Fleming* by providing petitioner with a hearing. The board referred to that hearing to determine when petitioner should be released as a "prison term hearing."

The board scheduled petitioner's prison term hearing in July 2011. More than 14 days before the hearing, petitioner was provided with materials that the board would consider during the hearing. The documents included, *inter alia*, an "official version" of the crimes of conviction, as well as a list of aggravating and mitigating factors with respect to those crimes. Among the aggravating factors listed were factors "C" ("[k]new or had reason to know the victims were particularly vulnerable") and "Q" ("[f]ailure to demonstrate remorse or empathy"). OAR ch 255, Ex E (May 19, 1982) (stating that the factors are aggravating circumstances justifying a variation from the range of duration of imprisonment).

At the hearing, the board again informed petitioner that it was considering factor C because he had reason to know at the time of the murders that his father, who was 74 years old, was particularly vulnerable. The board also informed petitioner that it was considering factor Q because of petitioner's extreme lack of emotion displayed throughout his presentence investigation and trial, as well as his failure to show any remorse. The board then allowed petitioner an opportunity to state his position on the aggravating factors. Petitioner did not raise any concerns to the board regarding their application to his prison term. In fact, when asked if he had any comments about the proposed use of aggravating factors, petitioner responded, "I don't think so."

The board issued its decision in a 2011 board action form. The board explained that its finding for aggravating factor C was based on the fact that petitioner knew that one of his victims was particularly vulnerable due to age, given that petitioner's father was 74 years old at the time that petitioner murdered him. Regarding aggravating factor Q, the board explained that its finding was based on several considerations: (1) petitioner did not take responsibility for the murders; (2) petitioner displayed no emotion during investigation or trial; and (3) petitioner declined to provide any additional information to the board, despite the fact that he knew the board might rely on his lack of remorse or empathy as an aggravating factor.

The board set petitioner's "prison term"—"[t]he actual amount of time the [b]oard determines a prisoner will serve" in prison before being eligible for consideration for parole, *former* OAR 255-30-005(2) (Feb 1, 1979)—at the top of the matrix range and then added 72 months based on the aggravating factors (applying two standard variations of 36 months), for a projected "parole release date of 02/03/2022, following 448 months." Specifically, the board calculated petitioner's projected parole release date by first determining the total number of months of his three consecutive sentences. The board did so by adding the matrix ranges of each aggravated murder sentence (120 to 168 months each) with his matrix range for his first-degree arson sentence (30 to 40 months), which resulted in a total matrix range of 270 to 376 months for his combined consecutive sentences. To that 376-month top-of-range total, the board added 72 months due to the two aggravating factors.

Petitioner timely sought administrative review, asserting several challenges. Petitioner then sought to add to the review the issues he raises in his first and fifth assignments of error. He provided the board with a supplemental document 25 days before the board issued its review response. The board received the document but determined that it would not consider it as part of the administrative review. As a result, it is not in the judicial review record. The board considered the issues in petitioner's review request, ultimately upholding all of its prior decisions. For that reason, the board denied petitioner any relief.

## II. DISCUSSION

### A. *First and Fifth Assignments of Error*

We begin with petitioner's first and fifth assignments of error on judicial review. In his first assignment of error, he asserts that the board lost "jurisdiction" over him after 2009 and, thus, its decisions in 2011 were a nullity. Petitioner's theory is that the board lacked authority to conduct a prison term hearing because (1) the court in *Severy/Wilson* did not remand to the board for a prison term hearing and (2) the prison term hearing was not allowed under Oregon law. In his fifth assignment of error, petitioner challenges the board's finding that he failed to demonstrate remorse or empathy—the board's application of aggravating factor Q in OAR chapter 255, Exhibit E (May 19, 1982)—because, in his view, the board improperly relied on his exercise of his constitutional right to trial in considering his prison term. We understand petitioner's argument to be that the board violated his Fifth Amendment right to remain silent by punishing him—increasing his matrix range—for his silence during the investigation and trial.

In response, the board asserts that petitioner's arguments are not cognizable on judicial review because petitioner failed to properly raise them on administrative review. *See Ayres v. Board of Parole*, 194 Or App 429, 435-36, 97 P3d 1 (2004) (a "party must present the particular challenges it intends to raise on judicial review first to the administrative body whose review must be exhausted"); ORS 144.335(1)(b) ("A person over whom the [board] * * * exercises its jurisdiction may seek judicial review of a final order of the board as provided in this section if * * * [t]he person has exhausted administrative review as provided by board rule."). The board notes that petitioner's administrative review request did not mention either argument.

We agree with the board that petitioner failed to timely raise the issue that he identifies in his first assignment of error. Petitioner did not raise the legal issue of whether the board had authority over him at any time before or at his hearing. In his administrative review request, petitioner again did not argue that the board lacked authority

over him. Although petitioner tried to add that argument in his supplemental document submitted to the board, the board was authorized to decline to consider it because it introduced new allegations in a manner that did not meet the requirements of OAR 255-080-0008(3)(c). Under that rule, "[l]egal arguments relating to the challenged order must be incorporated into the 8-page administrative review request; any claims or allegations included solely in the 'additional documentation' will not be considered by the [b]oard in its response." Because petitioner failed to incorporate his legal argument relating to the challenged order into his administrative review request, the board refused to consider it. The board does have a process for requesting the inclusion of supplemental documents under OAR 255-080-0008(4)(c).[3] However, the record does not reflect that petitioner properly requested the inclusion of his supplemental document in accordance with that rule. As a result, petitioner's supplemental document is not in the judicial review record, and we will not consider the issues raised in that document.

As for the board's decision to apply aggravating factor Q, petitioner's current challenge based on a constitutional violation comes too late. Petitioner knew from the board's decision that it was applying factor Q based on petitioner displaying an extreme lack of emotion throughout the presentence investigation and trial and failing to show any remorse. In his administrative review request, petitioner did contend that the board's application of aggravating factor Q was impermissible, but for a different reason than he asserts on appeal. He failed to mention the board's alleged reliance on petitioner's exercise of his constitutional right to trial in considering his prison term. That omission prevents him from now raising that argument for the first time on review. *See* OAR 255-080-0008(1)(d) (on administrative review, an offender must specifically identify how the challenged board action is alleged to be in violation of statutes or board rules or in what other way the offender believes the board's action to be in error).

---

[3] Under OAR 255-080-0008(4)(c), an "offender is responsible for requesting an exception and filing his review request within 45 days as required by OAR 255-080-0005."

Because petitioner failed to properly raise the issues identified in his first and fifth assignments of error on administrative review before the board, those issues are not cognizable on judicial review. Accordingly, we reject the first and fifth assignments of error.

### B. *Second Assignment of Error*

We turn next to petitioner's second assignment of error. On review, petitioner asserts that the board exceeded its authority by holding the 2011 "prison term hearing." Relying on OAR 255-30-012(1) (Feb 1, 1979), petitioner argues that the board may conduct a prison term hearing only within the first six months of admitting a prisoner to a correctional institution, which he argues it already conducted in 1985, and, therefore, the board had no authority to conduct a second prison term hearing in 2011. We disagree with petitioner because the board, in accordance with *Janowski/Fleming* and the scope of the remand in *Severy/Wilson*, properly determined that a hearing to set petitioner's projected parole release date, which it referred to as a "prison term hearing," was the appropriate procedure to use.

In *Janowski/Fleming*, a parole eligibility case that was decided on the same date as and involved similar issues to those in *Severy/Wilson*, the Supreme Court held that the board had the authority to override a prisoner's 30-year mandatory minimum sentence for aggravated murder and to release the prisoner after 20 years in prison on a finding that the prisoner is capable of rehabilitation within a reasonable period of time. *Janowski/Fleming*, 349 Or at 452-53. It also held that, in such an event, the board must use the applicable matrix rules in effect at the time of the commission of the underlying offenses to determine when the prisoner should be released. *Id.* at 456. The court noted that the only question remaining was what the board should do with respect to those prisoners whose terms of confinement were converted to life imprisonment with the possibility of parole and, specifically, what it should do with prisoners, such as the petitioners, whose matrix ranges had already expired. *Id.* The court rejected the petitioners' arguments that they had to be released immediately on parole. *Id.* at 459. Instead, the court concluded:

"It follows from our discussion and holdings above *that the board must now conduct a hearing, using whatever procedures it deems appropriate,* to set each prisoner's release date according to the matrix in effect when he committed his crime. Because the matrix range in [one petitioner's] case already has expired, we anticipate that the release date in his case will be set in the near future."

*Id.* at 456 (emphasis added).

In *Severy/Wilson*, the court addressed the following question: "What is the effect of our holding in *Janowski/Fleming* on cases in which a prisoner has been convicted of more than one aggravated murder and in which the trial court ordered the prisoner to serve consecutive sentences of life in prison with 30-year mandatory minimum terms of imprisonment?" 349 Or at 468. The court went on to hold that, when the board found that petitioner and the co-petitioner were capable of rehabilitation, it was required to convert both of petitioner's and the co-petitioner's sentences to life in prison with the possibility of parole. *Id.* at 477-78. Accordingly, the court remanded *Severy/Wilson* to the board for "further proceedings," *id.* at 478, directing the board to "conduct a hearing, using whatever procedures it deems appropriate, to set each prisoner's release date according to the matrix in effect when he committed his crime," *Janowski/Fleming*, 349 Or at 456; *see also Severy/Wilson*, 349 Or at 464 (citing *Janowski/Fleming*, 349 Or at 453) (stating that the board should conduct "further proceedings"). To understand the court's remand instructions for the board, *Janowski/Fleming* and *Severy/Wilson* must be read together. The remand instructions to the board were in essence the same in both cases: determine each prisoner's projected parole release date—given that the prisoners, including petitioner, did not have projected parole release dates—according to the matrix rules in effect when he committed his crime.

The court did not direct the board in either case to use a particular method to determine petitioner's projected parole release date on remand. *See Gearhart v. PUC*, 356 Or 216, 234, 339 P3d 904 (2014) ("Rarely should a court impose its will on the agency by specific instructions. Usually the best approach is for the court to note the error and allow the

agency to correct that error." (Internal citations omitted.)). In addition, the court's remand instructions did not purport to limit the authority of the board. *See id.* (stating that the most appropriate remedy when a court concludes that an agency has erred is "usually remand to the agency for it to correct any error" and that providing an agency with general instructions on remand "allows the court to perform its review function without invading the province of the agency" (citations and internal quotations ommitted)). Rather than providing specific instructions, the court thought that the "more prudent course [was] to remand * * * to the board so that it may address those questions in the first instance." *Severy/Wilson*, 349 Or at 478. Consequently, the board was permitted to conduct a hearing, using whatever procedures it deemed appropriate, to set each petitioner's release date.

On remand from the Supreme Court, the board elected to adhere to the court's charge by providing petitioner with a hearing, which it referred to as a "prison term hearing" and, apart from the timing of its occurrence, treated like a prison term hearing to determine when petitioner should be released. Individuals convicted of aggravated murders committed in 1984 were seen at "a prison term hearing within six months of confinement at a state institution." OAR 255-30-012(1) (Feb 1, 1979) ("Scheduling and Hearing Procedure for Aggravated Murder"). At such a hearing, the [b]oard * * * make[s] necessary findings such as history/risk score, aggravation or mitigation and * * * establishe[s] the maximum period of confinement[.]" *Id.*

To give effect to the holdings in *Severy/Wilson* and *Janowski/Fleming*, the board held the prison term hearing under the substantive law and procedural rules in effect at the time petitioner committed his crimes. At the hearing, the board established a crime category rating and criminal history risk score that applied in petitioner's case, stated the resulting matrix range, and applied two aggravating factors and a mitigating factor. Based on that information, the board set a prison term. Having calculated petitioner's prison term under the matrix rules in effect at the time of petitioner's crimes and having determined that petitioner was eligible for parole—pursuant to the directive of the Supreme Court in *Severy/Wilson* that the term of petitioner's confinement

had been changed to life in prison with the possibility of parole or work release—the board for the first time set a projected parole release date for petitioner.

We conclude that, for purposes of carrying out the charge on remand, the board's action was proper. The board's authority stemmed from the Supreme Court's remand instructions in *Janowski/Fleming* and *Severy/Wilson*. By providing petitioner with a prison term hearing, the board adhered to the court's instructions.

Petitioner's challenge is based on a semantic argument. The crux of his argument is that the board was prohibited from holding a new prison term hearing in 2011, because, by rule, the board can hold a prison term hearing only within the first six months of admission to a correctional institution, which it had already done in 1985. Alternatively, petitioner argues that, even if the board had the authority to conduct a second prison term hearing, it should have done so within six months of petitioner's finding of rehabilitation in 2004. However, petitioner's arguments do not take into account the court's instructions on remand: "[*T*]*he board must now conduct a hearing, using whatever procedures it deems appropriate*, to set * * * [petitioner]'s release date according to the matrix in effect when he committed his crime." *Janowski/Fleming*, 349 Or at 456 (emphasis added). The court charged the board with the obligation to conduct a hearing to determine petitioner's release date; therefore, the board used a mechanism in place in 1984 to carry out its charge—a prison term hearing. The board determined that the appropriate procedure was one that the board uses for setting parole release dates in virtually any other case. Petitioner's position cannot be reconciled with *Janowski/Fleming* and *Severy/Wilson*. The board did not err in holding the prison term hearing on remand.

C. *Fourth Assignment of Error*

We turn next to petitioner's fourth assignment of error. Petitioner argues that the board misapplied aggravating factor C, vulnerability of one of the victims, petitioner's father, to support an upward variation on petitioner's prison term. Petitioner contends that factor C applies only when

the offender exploits the victim's vulnerability. The board responds that petitioner's reading of factor C is untenable and that substantial evidence supported its finding that petitioner's father was "particularly vulnerable" because he was 74 years old.

We review the board's order to determine whether the board has "erroneously interpreted a provision of law." ORS 183.482(8)(a). In addition, we review to determine whether the order is "supported by substantial evidence in the record." ORS 183.482(8)(c). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." *Id.* The standard of review in ORS 183.482(8)(c) also requires that the board's conclusions "be supported by substantial reason, *i.e.*, its conclusions must reasonably follow from the facts found." *Simpson v. Board of Parole*, 237 Or App 661, 663, 241 P3d 347 (2010). We conclude that the board correctly applied factor C and that petitioner's knowledge of the victim's vulnerability was sufficient.

Aggravating factor C is defined under OAR chapter 255, Exhibit E, (May 19, 1982) as follows: "Knew or had reason to know the victims were particularly vulnerable (*i.e.*, aged, handicapped, very young)." The board explained the reason for its finding of aggravation under factor C:

"Most developed world countries have accepted the chronological age of 65 years as a definition of 'elderly' or older person. Considering that the average life expectancy at birth for a person born in 1910 was just about 50 years, or that in 1984 the average life expectancy was 74.7 years, the [b]oard had substantial evidence to find that in 1984 your 74-year-old father was 'aged' and fit the definition of aggravating factor C."

The initial question is whether factor C contains a requirement that the offender exploit the victim's vulnerability. As noted above, the text of factor C does not contain an exploitation requirement. Nevertheless, petitioner relies on *State v. Fitzgerald*, 117 Or App 152, 843 P2d 964 (1992), and *State v. Enemesio*, 233 Or App 156, 255 P3d 115, *rev den*, 348 Or 414 (2010), for his argument that there is an exploitation requirement to be read into factor C. Petitioner's reliance

on *Fitzgerald* and *Enemesio* is misplaced because the aggravating factor in both of those cases was a vulnerable-victim factor in the criminal sentencing guidelines[4] that is significantly different from factor C. The guidelines factor includes a requirement that factor C does not, namely, that the victim's particular vulnerability "increased the harm or threat caused by the criminal conduct." *See former* OAR 253-08-002(1)(b)(B); *Fitzgerald,* 117 Or App at 154; *Enemesio,* 233 Or App at 162. Petitioner correctly asserts that the factor in *Fitzgerald* and *Enemesio* requires more evidence to support its application. But, by its terms, factor C does not require the same evidence. The factor requires only that a person knew or had reason to know that the victim was particularly vulnerable. Therefore, we reject petitioner's reading of factor C.

Next, citing *Enemesio* and *Jarvis v. State Board of Parole,* 96 Or App 322, 773 P2d 3, *rev den,* 308 Or 197 (1989), petitioner argues that the board made an improper general finding of vulnerability. Petitioner points to *Enemesio* in arguing that the board may not apply aggravating factor C based solely on "testimony about the vulnerability of crime victims generally, or even categories of crime victims * * * alone." *Enemesio,* 233 Or App at 162. His argument fails under *Enemesio* because the board did not apply factor C based solely on testimony about the general vulnerability of aged crime victims. Instead, in its order, the board explained in detail why it found that the victim in this case—petitioner's father—was particularly vulnerable; he was 74 years old, and very aged given average life expectancies.

Similarly, petitioner relies on *Jarvis* to argue that the board improperly made a finding of general vulnerability based solely on petitioner's father falling under the "aged" category of factor C. However, far from supporting petitioner's argument, *Jarvis* undercuts it. In *Jarvis,* the board considered aggravating factor C in determining the petitioner's parole release date. *Jarvis,* 96 Or App at 324. On judicial review, we stated that a victim's particular vulnerability and a victim's age are "not necessarily coextensive."

---

[4] That factor was originally enacted in *former* OAR 253-008-002 (Sept 1, 1989), was renumbered as OAR 213-008-0002 (2010).

*Id.* In other words, the board must state why the victim's age made him or her particularly vulnerable. The board in this case, similarly to the board in *Jarvis*, properly demonstrated that the requirements of factor C were met by incorporating the words of that factor with the additional fact that the victim is particularly vulnerable. *See id.* at 325. In making its decision, the board did not make a finding of general vulnerability. Because the board identified the particular facts and the particular criteria on which it relied in support of its conclusion, the board's order is adequately supported by substantial reason. The board did not err by applying aggravating factor C to support an upward variation on petitioner's prison term.

D. *Sixth Assignment of Error*

Finally, in his sixth assignment of error, petitioner contends that, due to an insufficient number of board members, the board improperly applied two variations to increase the length of his incarceration. Petitioner contends that the board must have more than three members before it can apply two standard variations. However, in 1991, the legislature changed the board's composition so that it is now authorized to have between three and five members. Or Laws 1991, ch 126, § 1. The state argues that, even if the board has only three members, *Jancsek v. Board of Parole*, 162 Or App 96, 987 P2d 20 (1999), *rev den*, 327 Or 607 (2000), allows unanimous board decisions on variations. We agree with the board that *Jancsek* controls in this case and petitioner has failed to demonstrate that the board committed any error when it found two variations.

Petitioner argues that the applicable board rule concerning departures, *former* OAR 255-35-035 (May 19, 1982) and OAR chapter 255, Exhibit D (May 19, 1982), does not authorize the board to increase his sentence by more than one standard deviation, or 36 months, because the board consists of only three members. At the time of the adoption of the rule, and at the time of petitioner's crime, the board had five members. ORS 144.005(1) (1975), *amended by* Or Laws 1991, ch 126, § 1. The rule provided that, for category-7 crimes, three of those members could approve a single standard variation of 36 months; that four could

approve two standard deviations, or 72 months; and that, if all five agreed, the board could approve three standard deviations, or 108 months. *Jancsek*, 162 Or App at 98. The board repealed that rule in 1991, but it continues to apply to petitioner because he committed his crime in 1984, while it was in effect.

Under the current version of ORS 144.005, the board is authorized to have between three and five members. The board in fact had three members in 2011, when it determined petitioner's prison term, and in 2012, when it rejected his request for administrative review of that decision. Thus, only three, rather than five, members voted to apply two standard variations to petitioner's sentence; those three members, however, represented the unanimous decision of the entire board. Under *Jancsek*, the unanimous decision was sufficient to meet the requirements of the rule. 162 Or App at 99. The board's action was consistent with the underlying purpose of the rule and did not deprive petitioner of any right under it.

Accordingly, we affirm the board's order setting petitioner's projected parole release date for February 2022.

Affirmed.