Filed:  September 9, 2011

IN THE SUPREME COURT OF THE STATE OF OREGON

FARMERS INSURANCE COMPANY OF OREGON,

Respondent on Review,

v.

TOSHA K. MOWRY,

Petitioner on Review.

(CC 080202045; CA A141214; SC S058706)

En Banc

On review from the Court of Appeals.*

Argued and submitted on March 1, 2011.

Kathryn H. Clarke, Portland, argued the cause and filed the brief for petitioner on review.  With her on the brief was Hala J. Gores, Portland.

Thomas M. Christ, Cosgrave Vergeer Kester LLP, Portland, argued the cause and filed the brief for respondent on review.

BALMER, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

DURHAM, J., filed a specially concurring opinion, in which DeMuniz, C.J., and Walters, J., joined.

* Appeal from Multnomah County Circuit Court. Henry C. Breithaupt, Circuit Judge Pro Tem. 236 Or App 236, 234 P3d 1098 (2010).

BALMER, J.

This case concerns the proper application of *stare decisis* and requires us to decide whether *Collins v. Farmers Ins. Co.*, 312 Or 337, 822 P2d 1146 (1991), is still good law.  In *Collins*, this court held that an exclusion in a motor vehicle liability insurance policy that purported to eliminate all coverage for a claim by one insured against another insured under the same policy was unenforceable to the extent that it failed to provide the minimum coverage required by the Financial Responsibility Law (FRL), ORS 806.060 and ORS 806.070.  *Id*. at 347.  The exclusion, however, was enforceable as to any coverage beyond that statutory minimum.  *Id*.  In this case, plaintiff, Farmers Insurance Company, issued an insurance policy to defendant, Tosha Mowry, that contained an exclusion identical to the exclusion in *Collins*.  Defendant was injured in an accident in which her friend -- a permissive user and thus an insured person under the policy -- was driving.  Plaintiff brought this action seeking a declaration that defendant had $25,000 available in coverage under her policy -- the minimum coverage required by the FRL for bodily injury to one person in any one accident.  Defendant argues that her coverage is $100,000, the insurance amount stated on the declarations page of her policy.  The parties filed cross-motions for summary judgment, and the trial court granted plaintiff's motion and denied defendant's.  The Court of Appeals affirmed in a per curiam opinion that cited *Collins*.  *Farmers Ins. Co. v. Mowry*, 236 Or App 236, 234 P3d 1098 (2010).  We affirm.

The facts are undisputed.  Plaintiff issued defendant a motor vehicle liability insurance policy that provides liability coverage with limits of $100,000 per

1

person and $300,000 per occurrence. Exclusion 12(a) of the policy, however, states that "coverage does not apply to * * * [l]iability for bodily injury to an insured person." The policy defines an "insured person," in relevant part, as "you" or "[a]ny person using your insured car." Thus, the policy provided insurance coverage for claims made against an insured by third parties, but purported to exclude coverage for claims against an insured made by other "insured persons" under the policy, such as family members or others using the insured vehicle.

In 2005, defendant was injured in a collision while riding as a passenger in her own vehicle, which her friend was driving. Under the insurance policy, defendant's friend was an insured person. Defendant made a claim under the policy, but defendant and plaintiff disagreed on the amount of coverage available for the claim. Plaintiff contended that $25,000 was available -- the minimum amount required by the FRL -- because exclusion 12(a) caused defendant's coverage to "drop down" from the otherwise applicable per person liability coverage in the policy. Defendant sought coverage of $100,000 -- the per person liability coverage stated on the declarations page of the policy. As noted, the trial court and the Court of Appeals agreed with plaintiff, citing *Collins*. Defendant sought review, arguing that *Collins* should be overruled because it was wrongly decided and is in conflict with a more recent case, *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 22 P3d 739 (2001).

We begin by reviewing the relevant statutes and then turn to this court's

2

decision in *Collins*. Under ORS 742.450(4) (2005), *amended by* Or Laws 2007, ch 782, § 1,[1] "[e]very motor vehicle liability insurance policy issued for delivery in this state shall provide liability coverage to at least the minimum limits specified in ORS 806.070."

ORS 806.070(2)(a) sets the minimum limit at "$25,000 [for] bodily injury to or death of one person in any one accident." ORS 742.464 provides:

> "Any policy which grants the coverage required for a motor vehicle liability insurance policy under ORS 742.450, 806.080 and 806.270 may also grant any lawful coverage in excess of or in addition to the required coverage, and such excess or additional coverage shall not be subject to the provisions of * * * [ORS] 742.450 to 742.464. With respect to a policy which grants such excess or additional coverage only that part of the coverage which is required by ORS 806.080 and 806.270 is subject to the requirements of those sections."

Thus, an insurance policy may limit the coverage for some types of liability, including insured-versus-insured claims, to the minimum limits required by the FRL even though the policy provides greater coverage for other types of claims.

In *Collins*, Farmers issued a motor vehicle liability policy that was virtually identical to the policy in this case, including a liability limit of $100,000 per person and $300,000 per occurrence and an exclusion stating that "coverage does not apply to * * *

---

[1]    In 2007, the legislature amended ORS 742.450 by adding subsection (8): "Every motor vehicle liability insurance policy issued for delivery in this state shall contain a provision that provides liability coverage for each family member of the insured residing in the same household as the insured in an amount equal to the amount of liability coverage purchased by the insured." Aside from that amendment, which was not in effect at the time of the accident in this case, the legislature has not altered the provisions of any statute relevant to this case since *Collins*. Subsequent references to ORS 742.450 are to the 2005 version of the statute.

3

[l]iability for bodily injury to an insured person." *Collins*, 312 Or at 339 (boldface type omitted). The plaintiff, a family member of the insured, was injured while a passenger in the insured's car. As a family member of the insured, the plaintiff was an insured person under the policy. Farmers notified the plaintiff that it would only provide $25,000 in coverage, the minimum amount required by the FRL. The plaintiff asserted that the absolute exclusion violated Oregon law and was therefore completely unenforceable. The plaintiff argued that he was entitled to $100,000 in coverage, the full amount stated on the declarations page of the policy. *Id*. at 340.

After describing the relevant components of the FRL, the court stated that Oregon law implies in every motor vehicle liability insurance policy issued in the state a provision that the policy includes the minimum coverage required by ORS 742.450, ORS 806.080, and ORS 806.270. *Id*. at 342. "Coverage other than that required by law may be limited by any lawful exclusion." *Id*. at 343. More specifically, the court stated:

> "The manifest purpose of ORS 742.464 is to permit an insurer to write any other lawful coverage that the insurer wishes to write, in addition to the required coverage. Such coverage may include higher limits than those required by ORS 742.450 and 806.080. But as to such higher limits, the mandatory requirements of ORS 742.450 and 806.080 do not apply. The insurer may limit such additional coverage by any exclusion not otherwise prohibited by law."

*Id*. at 342.

The court then examined whether the absolute exclusion for insured-versus-insured claims in that policy -- an exclusion, as noted, identical to the one in this case --

4

limited coverage to the FRL minimum. Because the law implies in every insurance policy the minimum requirements of the FRL[2] and because coverage beyond those minimums could be limited by any lawful exclusion, the court held that the absolute exclusion "although ineffective as to the first $25,000 of coverage, [was] effective as to any coverage in addition to $25,000." *Id*. at 343.

A dissenting opinion in *Collins* argued at length that the plaintiff should have had $100,000 of coverage under the policy. The dissent took issue with the majority's interpretation of ORS 742.464. In its view, that statute required an insurance policy to first grant the minimum coverage required by the FRL before the policy could exclude excess coverage. *Collins*, 312 Or at 351 (Unis, J., dissenting). Because the exclusion in *Collins* denied all coverage for insured-versus-insured claims instead of granting the minimum required by the FRL, ORS 742.464 did not allow Farmers to

---

[2]     Unlike the policy in this case, the policy in *Collins* included a provision that "[p]olicy terms which conflict with laws of Oregon are hereby amended to conform to such laws." 312 Or at 343. The court, however, noted that that provision is merely an embodiment of ORS 742.038(2), which provides:

"Any insurance policy issued and otherwise valid which contains any condition, omission or provision not in compliance with the Insurance Code, shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy been in full compliance with the Insurance Code."

Thus, the court in *Collins* would have construed the policy to comply with Oregon law even had the policy not included the provision mention above. 312 Or at 343. *See also Fleming v. United Services Automobile Assn.*, 329 Or 449, 459, 988 P2d 378 (1999) (ORS 742.038(2) "requires courts to construe an otherwise valid insurance policy to bring the policy into full compliance with the Insurance Code.").

exclude any excess coverage. *Id*. at 352. The dissent concluded:

> "If the insurer wishes to exclude from excess coverage persons required * * * to be covered for the statutory minimum, it must first affirmatively grant the statutorily-required minimum coverage for those persons, ORS 742.464, and must state the limits of liability, ORS 742.450(1)."

*Id*. (emphasis omitted).

The dissent also voiced concern that the majority position would encourage insurers to rely on automatic inclusion of the statutory minimum coverage in policies they issue rather than writing policies that state precisely the actual coverage purchased by the insured. "The danger is that an insured and other parties might assume that the contract provisions are lawful and mean what they say and might thereby forgo making claims for coverage that Oregon law requires insurance companies to provide." *Id*. at 353 (internal quotation marks and citation omitted). The dissent argued that such a result "rewards an insurance company for selling an insurance policy that it did not certify under [the FRL] and that it should have known did not comply with [the] FRL because it contained an exclusion which improperly denied liability coverage required by [the] FRL." *Id*. at 347-48.

In this case, defendant argues that we should overrule *Collins* because it was wrongly decided and because *Hamilton* calls the reasoning of *Collins* into question. Plaintiff, on the other hand, asserts that the principle of *stare decisis* prohibits this court from overruling precedent without sufficient justification, which defendant, in plaintiff's view, has not provided. Plaintiff argues that the issues raised by defendant were fully considered by the *Collins* court and that *Hamilton* does not conflict with *Collins*.

6

Because the parties disagree about how *stare decisis* should be applied in this case, we turn to a review of that doctrine. "[T]he principle of *stare decisis* dictates that this court should assume that its fully considered prior cases are correctly decided. Put another way, the principle of *stare decisis* means that the party seeking to change a precedent must assume responsibility for affirmatively persuading us that we should abandon that precedent." *State v. Ciancanelli*, 339 Or 282, 290, 121 P3d 613 (2005). As this court has often stated, the motivating force behind the doctrine of *stare decisis* is "moral and intellectual, rather than arbitrary and inflexible." *Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 54, 11 P3d 228 (2000) (quoting *Landgraver v. Emanuel Lutheran*, 203 Or 489, 528, 280 P2d 301 (1955)).

Our cases discussing s*tare decisis* identify various considerations that this court has weighed in deciding whether to follow or to overrule an earlier decision. We have emphasized the "undeniable importance of stability in legal rules and decisions," *Stranahan*, 331 Or at 53, an importance based on the values of predictability, fairness, and efficiency that are furthered by adherence to precedents. But we also have recognized "the need * * * to correct past errors," *id.*, and to depart from precedent when the statutory context for a particular decision has substantially changed, *e.g.*, *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995), or when a party affirmatively demonstrates that "an earlier case was inadequately considered or wrong when it was decided." *G.L. v. Kaiser Foundation Hospitals, Inc.*, 306 Or 54, 59, 757 P2d 1347 (1988). Although our cases apply *stare decisis* differently in different contexts, as discussed in greater detail below, it is a unitary doctrine that applies generally to this

7

court's decisions. Put differently, the same considerations underlie the presumption that we will adhere to precedent whether the case involves constitutional interpretation, statutory interpretation, or common-law rule -- but the import of those considerations will vary depending on the case.[3]

Before returning to the parties' differing views on the application of *stare decisis* in this case, we pause to sketch briefly our approach to *stare decisis* in several common types of cases. In the area of constitutional interpretation, our cases emphasize that decisions "should be stable and reliable," because the Oregon Constitution is "the fundamental document of this state." *Stranahan,* 331 Or at 53. On the other hand, there is a "similarly important need to be able to correct past errors" because "[t]his court is the body with the ultimate responsibility for construing our constitution, and if we err, no other reviewing body can remedy that error." *Id.* In *Stranahan,* this court went on to

---

[3]     We do not undertake in this opinion to identify an exhaustive list of "considerations" that may be appropriate in determining whether a particular precedent should be followed or abandoned. The circumstances in which *stare decisis* applies are simply too varied. We note, however, that in addition to the considerations discussed in this opinion, this court has inquired into the age of the precedent at issue and the extent to which it had been relied upon in other cases. *See Ciancanelli*, 339 Or at 290-91 (distinguishing *Stranahan*, where precedent being reconsidered was less than 10 years old and had been little relied upon, with precedent challenged there, which was more than 20 years old and had been followed in many cases). We also acknowledge that the "degree" of the error in the earlier case and the extent of any resulting injustice or harm have both played roles, although impossible to quantify, in our cases. *See Severy/Wilson v. Board of Parole*, 349 Or 461, 474, 245 P3d 119 (2010) (an earlier interpretation of statute may "be *so* deficient" that reexamination is appropriate) (emphasis added); *Safeway Stores v. State Bd. Agriculture*, 198 Or 43, 80, 255 P2d 564 (1953) (court may depart from erroneous precedents which result in "grievous wrong" or are "injurious or unjust in their operation") (quoting 21 CJS, Courts, § 193, 322).

describe the circumstances under which it would revisit an earlier decision interpreting the Oregon Constitution:

> "[W]e remain willing to reconsider a previous ruling under the Oregon Constitution whenever a party presents to us a principled argument suggesting that, in an earlier decision, this court wrongly considered or wrongly decided the issue in question. We will give particular attention to arguments that either present new information as to the meaning of the constitutional provision at issue or that demonstrate some failure on the part of this court at the time of the earlier decisions to follow its usual paradigm for considering and construing the meaning of the provision in question."

331 Or at 54. *See also Ciancanelli*, 339 Or at 289-91, 321-22 (applying *Stranahan;* rejecting effort to overturn 20-year-old precedent).

In applying the principle of *stare decisis* to common-law precedents, we have relied upon similar considerations, although we have articulated them somewhat differently. In *G.L.*, for example, we listed three alternative bases, which, if affirmatively asserted by a party, would "ordinarily" cause us to reconsider a nonstatutory rule or doctrine:

> "(1) that an earlier case was inadequately considered or wrong when it was decided; (2) that surrounding statutory law or regulations have altered some essential legal element assumed in the earlier case; or (3) that the earlier rule was grounded in and tailored to specific factual conditions, and that some essential factual assumptions of the rule have changed."

306 Or at 59 (citations omitted).

*G.L.*, however, does not purport to cover all circumstances in which we will revisit common-law precedent. Rather, *G.L.* identifies the typical grounds for reconsidering a decision, namely where a decision was demonstrably wrong or where the statutory or factual underpinnings of a decision have changed. *G.L.* has been criticized

9

for making the application of *stare decisis* too rigid. *See Schiffer v. United Grocers, Inc.*, 329 Or 86, 104-05, 989 P2d 10 (1999) (Durham, J., concurring) (so stating); *Keltner v. Washington County*, 310 Or 499, 512-13, 800 P2d 752 (1990) (Unis, J., dissenting) ("The self-imposed rule of judicial restraint [adopted in *G.L.*] earns this court the dubious distinction of being the only state in the union to limit its traditional judicial common law-making authority so substantially."). But *G.L.* itself does not purport to establish a rigid "rule" for applying *stare decisis* to common-law decisions; rather, it illustrates common reasons that this court might be willing to reexamine precedent.

This court has addressed *stare decisis* as it applies to statutory interpretation on a number of occasions, and not always consistently. At times we have articulated a strict version of what is often referred to as the "rule of prior interpretation." Under that rule, "[w]hen this court interprets a statute, the interpretation becomes a part of the statute, subject only to a revision by the legislature." *State v. King*, 316 Or 437, 445-46, 852 P2d 190 (1993); *see also Stephens v. Bohlman*, 314 Or 344, 350 n 6, 838 P2d 600 (1992) (same). That statement in *King* to the contrary notwithstanding, this court has in fact declined to follow earlier decisions interpreting a statute when it has concluded that changes to other statutes, which provide the context for the statute at issue, require reconsideration of the prior decisions, *see Holcomb*, 321 Or at 105, and when it has been persuaded that its earlier interpretation was seriously in error. *See Severy/Wilson v. Board of Parole*, 349 Or 461, 474, 245 P3d 119 (2010).

The strict application of the rule of prior construction has long been criticized as wrong in principle and unduly restrictive in practice, *see State ex rel*

10

*Huddleston v. Sawyer*, 324 Or 597, 638-44, 932 P2d 1145 (1997) (Durham, J., concurring in part and dissenting in part) (critiquing rule of prior interpretation), and we take this opportunity to review and, for the reasons that follow, disavow it. The modern application of the rule first surfaced in *State v. Elliott*, 204 Or 460, 465, 277 P2d 754 (1955) (adopting rule), *cert den*, 349 US 929 (1955). When the rule was announced in *Elliot*, the court did not explain why (or how) an interpretation of a statute becomes part of the statute itself. *Elliot* simply asserted that a prior interpretation "became a part of the statute as if written into it at the time of its enactment." 204 Or at 465. The authorities *Elliot* cited for that proposition are of little help. The first, *State ex inf. Harvey v. Missouri Athletic Club*, 261 Mo 576, 606, 170 SW 904, 912 (1914), stated the rule of prior interpretation, but then declined to follow it because the prior case law was contrary to the purpose of the statute in question. The second authority, an article from *American Jurisprudence*, does not even discuss *stare decisis* and instead deals with the interpretation of one state's statutes by courts in a different state.

The rule of prior interpretation, as articulated in *Missouri Athletic Club*, is based on the theory of legislative acquiescence. 261 Mo at 605, 170 SW at 911. That theory posits that a judicial decision interpreting a statute becomes ratified by legislative silence and thus can only be changed by the legislature. Jack L. Landau, *Some Observations about Statutory Construction in Oregon*, 32 Willamette L Rev 1, 18-19 (1996). Legislative acquiescence, however, is a legal fiction that assumes, usually without foundation in any particular case, that legislative silence is meant to carry a particular meaning -- as relevant here, affirmation of the judicial decision at issue. *Id*. at

11

19-20. In reality, the legislature may decline to address a judicial decision for any number of reasons, none of which necessarily constitutes an endorsement of the decision's reasoning or result; this court does not surrender its authority to reexamine a prior interpretation of a statute merely because the legislature has been silent on the issue.

In *Severy/Wilson,* this court articulated a less rigid approach to precedent interpreting a statute:

> "Although this court makes every attempt to adhere to precedent, in accordance with the doctrine of *stare decisis,* it has, from time to time, found an earlier interpretation of a statute to be so deficient that it has concluded that some reexamination of the prior statutory construction was appropriate."

349 Or at 474. In *Severy/Wilson*, this court overruled a precedent that was "internally inconsistent" and "ignore[d] the words of the statute." *Id*. Similarly, in *Holcomb*, this court overruled precedent interpreting a statute when the stated bases for the prior case did not apply to *Holcomb*, were no longer correct due to changes in the statutory context, or provided only marginal support for the prior decision. 321 Or at 105.

Thus, our more recent cases discussing *stare decisis* have, appropriately, abjured the strict rule of prior interpretation articulated in *King* and have instead relied upon considerations similar to those that we have used in examining constitutional and common-law precedents. That does not mean that we perceive no difference between our task in interpreting a statute and our task in interpreting a constitutional provision or a rule of common law. On the contrary, as discussed above, *Stranahan* makes the point that, because this court is the ultimate interpreter of state constitutional provisions -- subject only to constitutional amendment by the people -- if we have erred in interpreting

12

a constitutional provision, there is no one else to correct the error.  That is not true in the interpretation of statutes.  Our responsibility in statutory interpretation is to "pursue the intention of the legislature, if possible."  ORS 174.020(1)(a).  After we have interpreted a statute, the legislature's constitutional role allows it to make any change or adjustment in the statutory scheme that it deems appropriate, given this court's construction of the statute (and, of course, subject to constitutional limitations).  The legislature can -- and often does -- amend a statute that this court has interpreted to clarify or change the statute or otherwise to advance the policy objectives that the legislature favors.

For those reasons, we disavow the inflexible rule of prior interpretation as set out in cases such as *Elliott* and *King*.  In applying *stare decisis* to decisions construing statutes, we will rely upon the same considerations we do in constitutional and common-law cases, although, as noted, the weight given to particular considerations will not necessarily be the same.

As the discussion above indicates, the application of *stare decisis* is not mechanistic.  Rather, *stare decisis* is a prudential doctrine that is defined by the competing needs for stability and flexibility in Oregon law.  Stability and predictability are important values in the law; individuals and institutions act in reliance on this court's decisions, and to frustrate reasonable expectations based on prior decisions creates the potential for uncertainty and unfairness.[4]  Moreover, lower courts depend on consistency

---

[4]    As Justice Brandeis put it, "*Stare decisis* is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than that it

13

in this court's decisions in deciding the myriad cases that come before them.  Few legal principles are so central to our tradition as the concept that courts should "[t]reat like cases alike," H.L.A. Hart, *The Concept of Law* 155 (1st ed 1961), and *stare decisis* is one means of advancing that goal.  For those reasons, we begin with the assumption that issues considered in our prior cases are correctly decided, and "the party seeking to change a precedent must assume responsibility for affirmatively persuading us that we should abandon that precedent." *Ciancanelli*, 339 Or at 290.  We will not depart from established precedent simply because the "personal policy preference[s]" of the members of the court may differ from those of our predecessors who decided the earlier case. *G.L.*, 306 Or at 59.

At the same time, this court's obligation when interpreting constitutional and statutory provisions and when formulating the common law is to reach what we determine to be the correct result in each case.  If a party can demonstrate that we failed in that obligation and erred in deciding a case, because we were not presented with an important argument or failed to apply our usual framework for decision or adequately analyze the controlling issue, we are willing to reconsider the earlier case. *See* *Stranahan*, 331 Or at 54 (so stating).  Similarly, this court is willing to reconsider cases when the legal or factual context has changed in such a way as to seriously undermine the

---

be settled right." *Brunet v. Coronado Oil & Gas Co.*, 285 US 393, 406, 52 S Ct 443, 76 L Ed 815 (1932) (Brandeis, J., dissenting.)

reasoning or result of earlier cases. *See Holcomb*, 321 Or at 105.[5]

With that discussion of *stare decisis* as background, we return to the parties' arguments. Plaintiff asserts that *Collins* is a case involving statutory interpretation, and so defendant's argument for overruling *Collins* should be summarily rejected under the rule of prior interpretation. As we have discussed in detail above, we reject the rule of prior interpretation. Defendant, on the other hand, contends that *Collins* was a case involving contract interpretation and thus, for *stare decisis* purposes, should be reviewed under the assertedly more flexible standard for common-law precedents set out in *G.L.*

*Collins*, in fact, relied on *both* common-law contract principles and statutory interpretation. *See Collins*, 312 Or at 341 ("The only question before us concerns the effect of exclusion 11(a). * * * ORS 742.464 answers the question."). In *Collins*, as here, there was no question as to the amount of coverage required by statute; the parties agreed that Farmers had to provide at least $25,000 in coverage for the insured's injuries, the FRL minimum. The issue was whether the exclusion was valid as to the additional coverage that the policy provided for some claims. Stated differently,

---

[5]     Although parties seeking to overturn an adverse precedent often argue that the case they challenge was erroneous at the time it was decided, that is not always necessary. Particularly in cases involving common-law rules, an earlier precedent may have not have been "wrong" when it was decided, but changes in other statutes and the evolution of the common law may lead this court to conclude that the earlier case should no longer be followed. *See, e.g.*, *Winn v. Gilroy*, 296 Or 718, 733-34, 681 P2d 776 (1984) (abrogating common-law parental immunity because common-law developments and changed statutory context demonstrated that controlling precedent had been "superseded").

15

the parties and the court agreed that ORS 742.464 allows an insurance policy to limit coverage to the minimum required by the FRL for insured-versus-insured claims. The question was whether the contractual exclusion had achieved that result.

Whether we consider *Collins* to be a common-law case or one of statutory interpretation makes little difference here. The sole issue in this case is whether the rule announced in *Collins* -- that a contractual exclusion for insured-versus-insured liability is effective beyond the minimum limit set by the FRL -- should be overruled. Defendant's basic argument is that *Collins* should be overruled because the case was wrong when decided. Defendant does not argue that other considerations, such as a change in the legal context or a change in the factual underpinnings of *Collins*, support reconsidering and overturning that decision. In fact, the Insurance Code and the FRL did *not* change in any relevant way between the time *Collins* was decided and when the accident leading to this case occurred. Similarly, the essential facts in this case are identical to those in *Collins*, so there is no difference in the factual setting to provide a basis to depart from *Collins*.

In arguing that *Collins* was wrongly decided, defendant contends that the *Collins* majority impermissibly rewrote the insurance policy in that case to grant the coverage required by the FRL when the policy expressly excluded such coverage. Defendant asserts that, under ORS 742.464, an insurer may exclude additional coverage for insured-versus-insured claims only if the policy first grants at least the required minimum coverage for those claims. However, *Collins* explicitly considered and rejected that argument. *See* 312 Or at 343, 343 n 3. Moreover, as noted, defendant does not argue

16

that the statutory or factual context of this issue has changed, so that *Collins,* even if not erroneous when decided, should no longer be followed. Rather, by raising only issues that were considered and rejected in *Collins*, defendant actually demonstrates that the *Collins* majority did in fact consider the arguments that she raises and that those arguments were unpersuasive to a majority of this court.

We assume that fully considered prior cases were correctly decided, *Ciancanelli*, 339 Or at 290, and defendant raises no argument that was not rejected by the majority in *Collins*. As such, there is no principled reason for this court to overrule *Collins* on the ground that the majority was wrong. *See G.L.*, 306 Or at 59 ("judicial fashion or personal policy preference" are not "sufficient grounds" to reverse well established precedent). Were we writing on a blank slate, we might agree with defendant that the *Collins* dissent had the better argument, but unless we ignore the doctrine of *stare decisis*, that prospect is an insufficient basis for overruling *Collins*.

In the area of commercial transactions, we have noted that stability and predictability strongly support adherence to precedent. *Noonan v. City of Portland*, 161 Or 213, 239, 88 P2d 808 (1939). That is so because parties rely on the rules of law announced by this court to structure their transactions, and this court should not upend those expectations without sufficient reason. *See Wilson v. Willamette Industries*, 280 Or 45, 52-53, 569 P2d 609 (1977) (so stating); *Huddleston*, 324 Or at 644 (Durham, J., concurring in part and dissenting in part) (precedent interpreting statutes that govern commerce "should not be reconsidered, except in the narrowest of circumstances, in order to serve the public's strong need for stability in commercial transactions"). That

17

need for predictability and stability in commercial transactions provides further support for adherence to precedent in this case.

We turn to defendant's contention that, despite *Collins* having decided the precise issue presented in this case, we should rule in defendant's favor because of this court's more recent decision in [*North Pacific Ins. Co. v. Hamilton*](#), 332 Or 20, 22 P3d 739 (2001). In that case, following an accident, the insured filed a claim against the driver, a family member, seeking the full coverage stated on the declarations page of the policy. North Pacific responded that only $25,000, the FRL minimum, was available in liability coverage under the policy. The policy contained a provision that North Pacific claimed was intended to exclude excess coverage for insured-versus-insured claims beyond the minimum amount required by the FRL. *Id*. at 22-23. The exclusion provided, "We do not provide Liability Coverage for any person * * * [f]or bodily injury or property damage to you or any family member to the extent that the limits of liability for this coverage exceed the limits of liability required by the Oregon financial responsibility law." *Id*. at 23 (boldface type omitted). That phrasing was an attempt by North Pacific to embody the holding in *Collins*. *Id*. at 26.

This court, however, distinguished the exclusion in *Hamilton* from the one in *Collins*, "which was worded as a simple, absolute exclusion from coverage." *Id*. at 27. The *Hamilton* exclusion operated only "to the extent that the limits of liability for this coverage exceed the limits required" by the FRL. *Id*. at 23. *Hamilton* thus required the insured to look to the FRL to divine the circumstances in which the exclusion applied and the attendant coverage. Even assuming that an insured was sufficiently sophisticated to

18

locate the FRL in the Oregon Revised Statutes, the words used by North Pacific in the exclusion did not track the wording of the FRL, which does not contain the phrase "limits of liability." *Id*. at 27-29. Further, as used in the policy, "limits of liability" referred to the maximum amount of coverage available under the policy; yet the FRL makes no mention of maximum limits of liability and instead sets the minimum amount of coverage insurers are required to provide. *Id.* at 28-29. Accordingly, the court held that the exclusion was so ambiguous as to be indecipherable: "[T]he ordinary purchaser of insurance would not be able to determine what [the exclusion] means and, more particularly, would not be able to determine that it is meant to reduce the limits of liability for certain claimants below the amount that appears on the declarations page." *Id*. at 29. Although *Collins* established that an insurer could limit liability to the FRL minimum, the exclusion drafted by North Pacific had not done so. *Id*.

Following the methodology for interpreting insurance contracts set out in *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992), the court construed the ambiguous exclusion against North Pacific and held, as a matter of insurance contract law, that the exclusion was not enforceable to any degree. Accordingly, that provision was eliminated from the policy, and North Pacific was liable for the full coverage listed on the declarations page. *Hamilton*, 332 Or at 29.

The parties agree that *Hamilton* did not expressly overrule *Collins*. Indeed, *Hamilton* cited *Collins* as establishing "that an insurance company may write an insurance policy that limits coverage" for insured-versus-insured claims to the FRL minimum, *id.*, and it contrasted the exclusion in *Collins*, which did just that, with the

19

ineffective exclusion in *Hamilton*. *Id.* at 27. Thus, at the time this court decided *Hamilton*, it did not view the two cases as in conflict. Despite that fact, defendant argues that *Collins* cannot be reconciled with the court's approach in *Hamilton*. In defendant's view, in both cases, "the basic problem is that the insured is confused and misled."

Defendant's argument hangs on the notion that it is inconsistent for this court to enforce an exclusion that did not accurately reflect Oregon law but to refuse to enforce an exclusion that attempted to follow the law but did so in an ambiguous manner. That perceived inconsistency, however, misses the mark. This court decided *Hamilton* based on common-law principles of insurance policy interpretation. *See Hamilton*, 332 Or at 29 ("It is the insurer's burden to draft exclusions and limitations that are clear."). The exclusion in that case was unenforceable because the insurer failed to draft it in a comprehensible manner. *Id*. *Collins*, on the other hand, was decided based on the conflict between an unambiguous exclusion that denied all coverage for insured-versus-insured claims and the unambiguous statutory requirement for minimum coverage. Because the exclusion was lawful under ORS 742.464 but the FRL imported a minimum coverage of $25,000 into the policy, the exclusion remained effective, but only as to the excess coverage granted by the policy. *Collins*, 312 Or at 343. Because *Hamilton* and *Collins* were decided under distinct legal theories construing differently worded exclusions, those cases do not directly conflict.

Even if we were to agree that *Hamilton* provides the proper approach to examining the exclusion in this case, such an inquiry simply leads back to the question posed by *Collins*, namely, the effect of an absolute exclusion for insured-versus-insured

20

claims. As a matter of contract law, exclusion 12(a)[6] in this case is perfectly clear: the insurer will provide no liability coverage for insured-versus-insured claims. Based on that unambiguous phrasing, the intent of the parties was that no coverage would be available. *See Hoffman*, 313 Or at 469 (goal of interpreting an insurance policy is to determine the intent of the parties based on the terms and conditions of the policy). Thus, in contrast to *Hamilton*, where the exclusion was unenforceable because it was ambiguous, the exclusion here is unambiguous and thus valid as a matter of contract law. The question then becomes whether and to what extent the exclusion is also valid under the relevant statutes, and, as discussed above, *Collins* held that it was valid as to amounts in excess of the statutory minimum.

Finally, defendant argues that the primary problem with the exclusion in *Hamilton* was not that it was ambiguous but that it was misleading. In defendant's view, because the absolute exclusions in this case and *Collins* are also "misleading" -- in that the exclusions do not accurately reflect the coverage that the insurer is directed by law to provide -- the absolute exclusions should be unenforceable as well. That argument, however, disregards the reasoning in *Hamilton*. This court did not hold that the exclusion in *Hamilton* was misleading; rather, the legally significant fact was that the insured could not understand the meaning of the exclusion itself -- it was "incomprehensible." *Hamilton*, 332 Or at 29. In this case, as in *Collins*, the exclusion is misleading only to the

---

[6]     Again, exclusion 12(a) states, "coverage does not apply to * * * [l]iability for bodily injury to an insured person."

21

extent that it is inconsistent with the coverage required by the Insurance Code and the FRL. *Collins* resolved that inconsistency by holding that the exclusion was unenforceable as to the minimum coverage required by those statutes, but enforceable as to coverage in excess of that amount. Moreover, defendant does not allege that she was, in fact, misled by exclusion 12(a) or that she relied on that exclusion to her detriment. Nor did the plaintiff in *Collins* make such an allegation.

The proponent of overturning precedent bears the burden of demonstrating why prior case law should be abandoned. *Ciancanelli*, 339 Or at 290. As noted, *Collins* and *Hamilton* are not directly in conflict, and defendant advanced no argument that this court has not previously considered for reaching a different result from that in *Collins*. Defendant failed to carry the burden for overturning a fully considered precedent of this court.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

DURHAM, J., specially concurring.

The central question posed by this case is whether this court should continue to recognize the unfortunate decision in *Collins v. Farmers Ins. Co.*, 312 Or 337, 822 P2d 1146 (1991), as a precedent under the court's doctrine of *stare decisis*. The majority's answer -- that *Collins* is "still good law" ___ Or at ___ (slip op. at 1) -- should not be taken as a compliment to either the reasoning or result adopted in that case. Rather, the majority concludes that defendant's arguments for overturning *Collins* fall short of meeting the requirements of *stare decisis*.

As I explain below, I join in the majority's conclusion, but not because defendant has made an insufficient showing that *Collins* was decided erroneously. The opposite is true.

The inquiry here, however, is broader than an assessment of whether *Collins* was wrongly decided. We must evaluate, in addition, the extent to which the *Collins* decision, even if erroneous, has caused parties, such as plaintiff, to rely justifiably on the rule announced in *Collins* to conduct their commercial transactions in a way that that case seems to permit. When viewed in that light, it appears that the *Collins* decision gave approval to the marketing of motor vehicle liability insurance policies that, contrary to law, explicitly eliminate all coverage for a claim by one insured against another insured under the same policy. In short, plaintiff's argument -- that, in these circumstances, the policy's minimum coverage of $25,000 for bodily injury to one person in one accident is the limit of its obligation to defendant -- is supported by a prior decision of this court in a virtually identical case. Although this court correctly has

1

declined to follow *Collins* in other coverage interpretation disputes, as discussed below, the societal interest in the stability of commercial transactions that the doctrine of *stare decisis* protects is especially strong when this court's precedent already has accepted, in an identical dispute, plaintiff's request to partially enforce its absolute exemption.

*Collins* was a 4-to-3 decision in this court. Justice Unis authored a lengthy dissenting opinion, which Justices Van Hoomissen and Fadeley joined. I will not repeat all the points registered in the dissent. To be candid, it does not appear to this writer that the majority and dissenting opinions succeeded in addressing the same issues.

According to the *Collins* majority, the issue in that case was whether a motor vehicle liability policy afforded the statutorily required minimum coverage of $25,000 for a claim by one insured party against another insured party under the same policy, even though the policy contained an express exclusion of *any* coverage for that kind of claim.[1] The plaintiff argued that the exclusion in the policy was unenforceable

---

[1]     The *Collins* majority stated:

"Under Oregon law, every motor vehicle liability insurance policy issued for delivery in Oregon must, at the least, provide coverage in the amounts required by statute. ORS 742.450.[1]"

312 Or at 340 (text of footnote omitted). In the footnote, the *Collins* majority opinion set out the text of the pertinent provisions of ORS 742.450, including subsections (1) and (2), and ORS 806.080. However, the court's sentence, quoted above, which purported to summarize what ORS 742.450 required "at the least," in fact distorted the text of that statute against the position of the insured. *Id.* As I explain, ORS 742.450 obligates the insurer to do more than "provide coverage in the amounts required by statute[,]" as *Collins* stated. *Id.* Subsections (1) and (2) both obligate the insurer, in issuing a motor vehicle liability insurance policy, to include *in the policy* an agreement that *states the*

2

because it violated the pertinent state statute, ORS 742.450, in two respects.

First, ORS 742.450(2) required the policy to "contain an agreement or indorsement stating that, as respects bodily injury and death or property damage, or both, the insurance provides * * * [t]he coverage described in ORS * * * 806.080 [*i.e.*, $25,000 because of bodily injury to or death of one person in any one accident]." The plaintiff pointed out that the policy in question failed to contain the required agreement; rather, it expressly excluded coverage for that kind of claim when state law required the insurer to expressly cover that kind of claim.

Second, ORS 742.450(1) provided:

> "Every motor vehicle liability insurance policy issued for delivery in this state shall state * * * the coverage afforded by the policy, * * * and the limits of liability."

According to the plaintiff, the insurer's statutory obligation to state the coverage and the limits of liability afforded by the policy *in the policy itself* protected the interest of the insurance-consuming public in allowing policyholders to determine their policy's coverage, as well as exclusions and exceptions to that coverage, from the face of the policy and, thus, obviate the need to research insurance statutes to determine the extent of

---

*coverage* that the policy provides. The *Collins* court should have addressed whether the insurer could satisfy those aspects of subsections (1) and (2) by seeking a partial enforcement of its absolute policy exclusion. But the *Collins* majority opinion never addressed those matters, in part because the court improperly narrowed the issue under ORS 742.450, asking only whether the policy "*provide[d] coverage* in the amounts required by statute." *Id.* (emphasis added.) Thus, I do not agree that *Collins* considered but rejected the arguments that defendant raises here.

3

any coverage.

The *Collins* majority began by acknowledging only one aspect of ORS 742.450 on which the plaintiff relied: the duty under subsection (2) to provide coverage in the amounts required by the statute. 312 Or at 340. The *Collins* majority then stated that the "only question before us concerns the effect of exclusion 11(a). Is the exclusion to be disregarded only as to the amount of the minimum liability coverage required by ORS 742.450 (and ORS 806.080)? Or is the exclusion to be disregarded totally?" *Id.* at 341. The *Collins* majority proceeded to effectively reform the terms of the absolute exclusion in the policy. In revising the policy's absolute exclusion in that manner, the *Collins* majority disregarded this court's long-standing rule that the court will enforce the policy's lawful terms as written and will not attempt to rewrite them, to suit one party's preferences, through the guise of interpreting the policy. *See Sitzman v. John Hancock Mut. Life*, 268 Or 625, 632, 522 P2d 872 (1974) ("we cannot rewrite the insurance policy or construe the same beyond its clear language"). It concluded that the exclusion was *not* effective as to the first $25,000 of coverage but *was* effective as to all coverage above that statutorily required amount. *Collins*, 312 Or at 347.

The *Collins* majority never considered, much less interpreted, subsection (1) of ORS 742.450, on which both the plaintiff and the dissent relied. Consequently, the *Collins* majority never evaluated whether its theory of partial enforcement of the policy's absolute exclusion still left the policy in violation of state law because the policy sold to the plaintiff failed to *state* the coverage and limits of liability, as ORS 742.450(1) required.

4

The *Collins* majority found support for its theory in ORS 742.464, which provides:

> "Any policy which grants the coverage required for a motor vehicle liability insurance policy under ORS 742.450, 806.080 and 806.270 may also grant any lawful coverage in excess of or in addition to the required coverage, and such excess or additional coverage shall not be subject to the provisions of ORS 742.031, 742.400 and 742.450 to 742.464. With respect to a policy which grants such excess or additional coverage only that part of the coverage which is required by ORS 806.080 and 806.270 is subject to the requirements of those sections."

The *Collins* majority's reliance on that statute fails to support the ultimate answer given in *Collins*. That is because the governing statute, ORS 742.450(1) and (2), imposed two significant requirements, not one, on insurers that marketed motor vehicle liability insurance policies in this state. Those requirements, as noted above, required the delivered policy (1) to *state* the policy's coverage and limits of liability, and (2) *to contain an agreement* providing (among other things) the $25,000 minimum coverage. The *Collins* majority asserted that ORS 742.464 permitted the majority to read into the defendant's policy a provision granting the minimum coverage of $25,000 required by ORS 742.450(2) and ORS 806.080 (even though, obviously, the policy explicitly excluded that coverage). 312 Or at 342-43. That approach, however, utterly fails to address, and clearly does not satisfy, the equally important requirement in ORS 742.450(1) that the policy must state the coverage that it affords and the limits of liability that apply, including statutorily required minimum coverage. The *Collins* majority gave not a word of explanation about how a policy that explicitly denied any coverage for insured-versus-insured claims nonetheless could satisfy the obligation to state expressly

5

in the policy that it granted the statutory minimum coverage for those claims.

As a result of the theory that the *Collins* majority adopted in the context of insured-versus-insured claims, the insurance-consuming public lost the assurance that the legislature sought to provide in ORS 742.450(1) and (2) -- that every motor vehicle liability insurance policy will *contain an agreement* providing the statutorily mandated coverage and that the policy will *state* the coverage and limits of liability *in its text*. The *Collins* decision leaves consumers at a serious disadvantage, despite the legislature's effort to protect them in those circumstances.[2] If policyholders read their insurance policies, they will learn only that their insurer has completely excluded any coverage of an insured-versus-insured claim, even though state law requires the insurer to provide minimum coverage of $25,000 for such a claim. The predictable effect of that circumstance is that policyholders will not request coverage, which state law requires insurers to provide, on insured-versus-insured claims.

---

[2]    For many decades, the Oregon legislature has required insurers to state in their motor vehicle liability policies the coverage that the policy affords and the limits of liability under the policy. *See*, *e.g.*, ORS 486.540 (1953), which provided:

> "Every motor vehicle liability policy shall state * * * the coverage afforded by the policy * * * and the limits of liability, and shall contain an agreement or indorsement which provides that the insurance is provided thereunder in accordance with the coverage defined in this chapter as respects bodily injury and death or property damage, or both, and is subject to all the provisions of this chapter."

The legislature consistently has retained those substantive statutory requirements although it has renumbered that statute several times during the intervening years. Those requirements now appear in ORS 742.450. It seems safe to say that the statutory rule that *Collins* modified was well-established Oregon law.

6

This court has declined to extend the rationale of *Collins* in later cases that also involved broad policy exclusions and the minimum coverage requirement of the Financial Responsibility Law (FRL), ORS 806.060, and ORS 806.070. In *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 23, 22 P3d 739 (2001), the insurer sought to obtain the benefit of the *Collins* rationale by drafting its motor vehicle liability insurance exclusion, "Exclusion 10," which excluded claims by one insured family member against another insured, to apply "to the extent that the limits of liability for this coverage exceed the limits of liability required by the Oregon financial responsibility law." The Hamiltons, husband and wife, were policyholders and named insureds. The husband was injured in an automobile accident; the wife was the driver of the car. The policy provided for $60,000 of coverage for each accident for bodily injury, and the husband requested that coverage. The insurer refused, contending that Exclusion 10 limited any bodily injury claim by one insured family member against another under the same policy to the statutory minimum coverage of $25,000. The insurer argued that the wording of Exclusion 10 was intended to embody the holding in *Collins* by confining any insured family member claim to the minimum $25,000 coverage provided by statute.

The court in *North Pacific* adopted a markedly different analysis than that used in *Collins*. Unlike in *Collins*, the *North Pacific* court focused on whether the insurer had clearly phrased Exclusion 10. The court concluded that the exclusion was ambiguous and, thus, unenforceable, stating:

> "This court's decision in *Collins* establishes that an insurance company may write an insurance policy that limits coverage in that manner, but the policy in the present case does not do so."

7

*Id.* at 29. The court held that, because Exclusion 10 was ambiguous and unenforceable, the insured husband was entitled to liability coverage in the amount of $60,000, as provided by the policy for bodily injury claims generally. *Id.*

The *North Pacific* court's description of *Collins* as a case pertaining to insurer authority to limit insured-versus-insured claims by the device of an exclusion is not fully accurate. Rather, *Collins* addressed only the legal effect of the exclusion in that case. 312 Or at 341. The *Collins* court concluded that "any lawful exclusion" could limit "coverage other than that required by law[,]" with the consequence being that the exclusion in *Collins* was not effective as to the first $25,000 of coverage but was effective as to any coverage above $25,000. *Id*. at 343.

If the *North Pacific* court had had any continuing confidence in the correctness of *Collins*, it easily could have held that Exclusion 10, at a minimum, was a lawful, even if ambiguous, exclusion and that its inartful reference to the "limits of liability for this coverage" did not obscure its exclusion of coverage exceeding that "required by the Oregon financial responsibility law." *North Pacific*, 332 Or at 23.

Instead, unlike in *Collins*, the *North Pacific* court voiced a concern that the ordinary purchaser of insurance would be unable to understand the scope of Exclusion 10. The *North Pacific* court concluded that Exclusion 10 was distinguishable from the exclusion in *Collins*, because Exclusion 10 was so confusing that it failed to confine the insurer's exposure to the $25,000 coverage required by statute. *Id.* at 29.

The court's effort in *North Pacific* to distinguish *Collins* leaves a curious state of affairs in the law. Under *Collins*, if the insurer uses clear wording and expressly

8

excludes *any* coverage for insured-versus-insured claims, even though the law requires $25,000 in minimum coverage for such claims, the court will partially enforce the exclusion and confine the coverage to the $25,000 statutory minimum coverage. However, under *North Pacific*, if the insurer's exclusion does not directly contradict the statutorily mandated minimum coverage requirement, and merely expresses an exclusion of coverage above statutory minimum amounts with some ambiguity, the court will not enforce the exclusion at all and will permit the insured claimant to recover coverage up to the limit stated on the declaration page for claims of bodily injury.

The court sought to explain the basis for that distinction in *Wright v. State Farm Mutual Auto. Ins. Co.*, 332 Or 1, 22 P3d 744 (2001), which the court decided on the same date as *North Pacific*. In *Wright*, the automobile insurer asserted that its policy excluded coverage for claims of bodily injury to insured family members. The wording of the policy exclusion was similar to that examined in *North Pacific*. The policy provided that it excluded any coverage for claims of bodily injury to the insured or "any other insured or member of an insured's family residing in the insured's household [,] to the extent the limits of liability of this policy exceed the limits of the liability required by law." *Id.* at 6. Relying on that exemption, the insurer refused to pay any amount above the minimum $25,000 coverage required by statute for the death of the insured plaintiffs' son, who was killed in a collision in his parent's vehicle. The insurer argued that, because the son resided in the plaintiffs' household, *Collins* required the court to construe the policy to exclude coverage "to the extent that" it exceeded $25,000. *Id.*

This court followed *North Pacific* in concluding that the exemption was

9

unenforceable, and the reasoning that the court relied on is pertinent to our discussion of *Collins*:

> "We held in *North Pacific* that the wording of the foregoing exclusion was ambiguous because *it failed to provide proper notice to the insured that liability coverage under the policy is limited to the statutorily required minimum coverage for injured insureds and their family members*. *Id.* at 29. We construed the provision against the insurer, the party who drafted the policy. Under that construction, we held that the insured was entitled to liability coverage in the amount provided on the declarations page of the policy. *Id.* at 29.
>
> "The wording of the exclusion in the automobile policy in the present case is as obtuse, if not more so, than the wording that we construed in *North Pacific*. The reference in the exclusion to 'the limits of liability required by law' does not inform a policyholder what limit, if any, is applicable in a given situation and does not even direct the policyholder to a particular body of law to find out what that limit is.[3] Resort to the context in which the phrase is used in the exclusion, as well as to other provisions of the policy, does not clarify the matter. The exclusion remains inherently ambiguous, if not incomprehensible. As we did in *North Pacific*, we hold that the exclusion in the automobile policy is unenforceable."

*Wright*, 332 at 7-8 (emphasis added).

According to *North Pacific* and *Wright*, the dispositive problem with the exemptions in those cases was that they failed to clearly notify the insured that the policy limited coverage to injured insureds and the insured's family members to the statutorily required minimum coverage. That reasoning is sound, but it came too late to change the

---

[3] The court's comment in *Wright* that the exemption under review "does not even direct the policyholder to a particular body of law to find out what that limit is" is *dictum*. *Wright*, 332 at 8. It is at least doubtful whether a policy would comply with the obligation in ORS 742.450(1) to state the policy's coverage and limits of liability by, for example, referring the policyholder to limits on coverage in the FRL without stating those limits in the policy.

incorrect reasoning applied in *Collins*. That is, if the court was not willing to enforce the exclusions in *North Pacific* and *Wright*, where the insurer had attempted to limit claims by injured insureds but stumbled in that effort due to ambiguous phrasing, certainly the court should not have been willing to enforce the exemption in *Collins*, where the exemption unambiguously and incorrectly stated that the policy afforded no coverage at all for claims by injured insureds. In both circumstances, the policy wording "failed to provide proper notice to the insured that liability coverage under the policy is limited to the statutorily required minimum coverage[,]" *Wright*, 332 Or at 7, and, accordingly, the result in each of the cases should have been the same.

Despite the virtually identical failure of notice to policyholders in *Collins*, *North Pacific*, and *Wright*, this court chose not to overrule *Collins* in *North Pacific* and *Wright* but to distinguish *Collins* instead. It was not essential to nullify *Collins* to reach a correct answer in *North Pacific* and *Wright*. But we still must decide whether *Collins* has continuing precedential force in this case, where the policy exemption is on all fours with that examined in *Collins*.

The record indicates that, after *Collins* came down, plaintiff and other insurers rewrote the pertinent exclusion for insured-versus-insured claims in their automobile liability policies to incorporate exemptions similar or identical to those later examined in *North Pacific* and *Wright*. After *North Pacific* and *Wright* declared that the revised exemptions were ambiguous and ineffectual, because they failed to give notice to policyholders that the policies limited coverage to $25,000, plaintiff again responded by rewriting its exclusion to return to the absolute phrasing of the policy exemption

11

addressed in *Collins*.

The motivation for that revision is clear and is not seriously questioned by defendant. By that tactic, plaintiff sought to claim that the revised exemption was enforceable against any insured-versus-insured claim beyond the minimum coverage of $25,000 required by state law, as *Collins* had held. Because this court had distinguished, not overruled, *Collins* in *North Pacific* and *Wright*, plaintiff had no incentive to eliminate the ambiguity in wording noted in *North Pacific* and *Wright*, and to give "proper notice to the insured" as *Wright* put it, 332 Or at 7, so that the exemption would satisfy ORS 742.450(1) and (2) by stating accurately the policy's coverage and limits of liability.

As the majority indicates, this court considers a number of factors in deciding whether to follow or to overrule a prior decision of this court. This court's disagreement with the result reached in a prior case ordinarily is not an adequate justification for overturning the prior decision.

*Collins* was an incorrect decision, in my view, because, as discussed above, the court disregarded important parts of the pertinent statutory text and reached a result that contradicts the legislature's intent to require insurers to state a policy's coverage and limits on liability in the text of the policy itself. The court effectively rewrote the policy exclusion, contrary to the court's ordinary interpretive methodology. The policy text gave no notice to policyholders that the coverage, as rewritten by the court, was limited to the $25,000 statutory minimum coverage. Those defects justify the conclusion that *Collins* was wrong when this court decided it.

Other factors, however, also must be considered. Here, the record shows

12

that plaintiff relied on *Collins* in redrafting its automobile liability policy exemption and in marketing its automobile liability policies. In fact, plaintiff restored to its exemption the exact wording that this court had addressed in *Collins*. Under that circumstance, a decision in this case to overrule *Collins* would upset the reasonable expectations of plaintiff and, presumably, other insurers about the case law that governs the interpretation of the exemption under review.

We also consider other factors. The legislature has not modified the legislative or administrative scheme surrounding the exemption in question in a way that might justify a reconsideration of *Collins* by this court.[4] *Collins*, decided by this court in 1991, is neither a particularly old nor a particularly new opinion. Finally, because *Collins* construed the terms of an automobile liability policy, that decision likely affected a substantial number of commercial transactions in that form of insurance, as well as the decision-making of governmental agencies and administrative policymakers who oversee the regulation of the automobile insurance market in Oregon.[5]

---

[4] The unchanged character of the legislative and administrative scheme since *Collins* was decided is not the same thing as so-called "legislative acquiescence." I do not rely at all on the latter, because the absence of an intervening legislative change does not signify legislative satisfaction with any court decision.

[5] The record contains little information about the purported justification for an exclusion of coverage of insured-versus-insured claims from automobile liability policies. Defendant suggests that the exclusion is aimed at eliminating fraudulent claims. Certainly that is a proper goal. However, the exclusion paradoxically denies coverage for all claims, not only for fraudulent ones, despite the existence of ample evidence and good faith to support a claim by an injured insured and the existence of other effective means whereby an insurer can protect itself against a false or fraudulent claim. Those are

13

In my view, this is a circumstance in which the need for stability and predictability in the automobile insurance industry, as well as the evidence of plaintiff's reliance on the ruling, support adherence to *Collins* under the *stare decisis* doctrine, even though *Collins* was wrongly decided. But I also urge the legislature to consider the problems surrounding *Collins*, particularly the failure of that decision to heed the legislature's efforts to assure that policyholders will receive reasonable notice, in the text of their policies, if the policy confines its coverage of insured-versus-insured claims to the minimum statutory coverage.

For the reasons stated above, I specially concur in the majority's decision.

De Muniz, C. J., and Walters, J., join in this opinion.

---

questions that are properly addressed by the legislature.