No. 247           April 1, 2026           161

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Shawn KELLIM
and Teresa Kellim,
*Petitioners,*

*v.*

DEPARTMENT OF HUMAN SERVICES,
*Respondent.*

Department of Human Services
2021DHS15576;
A179722

Argued and submitted July 24, 2024.

Ray D. Hacke argued the cause for petitioners. Also on the briefs was Pacific Justice Institute.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.*

EGAN, J.

Reversed and remanded.

_____

* Egan, J., *vice* Jacquot, J.

**EGAN, J.**

Petitioners seek judicial review of a final order of the Oregon Department of Human Services (ODHS) denying petitioners' application for a Certificate of Approval or a Child-Specific Certificate of Approval to operate a foster home.

On appeal, in two assignments of error, petitioners contend (1) that ODHS "demonstrated hostility toward Petitioners' Christian faith by denying Petitioners a foster care license in response to their religiously based refusals to provide LGBT+-affirming care to prospective foster children, thereby violating the [United States] Constitution's First Amendment" and (2) that ODHS erred "in declaring the provisions of [OAR 413-010-0180] and OAR 413-200-0308(2)(k) constitutionally sound on their face and as applied to Petitioners." For two reasons, we reverse and remand for reconsideration.

First, the basis for ODHS's conclusion in the order that "[t]he Department may deny Applicants' application for a child-specific certificate of approval or a certificate of approval to operate a foster home to provide care for a child or young adult in the care or custody of the Department" is unclear, preventing meaningful judicial review. *See Dye v. Employment Dept.*, 203 Or App 39, 41, 125 P3d 775 (2005) (reversing and remanding for reconsideration where the Employment Appeals Board "failed to sufficiently explain its determination" such that we could not "meaningfully review the board's order").

Specifically, the order on judicial review concludes that ODHS was permitted under OAR 413-200-0296(2)(a)[1] to deny petitioners' application because a "preponderance of the evidence shows the [petitioners] do not meet standards required of applicants contained in OAR 413-200-0308[], (2)

---

[1] OAR 413-200-0296 provides, in relevant part:

"(2) The Department may deny an application or revoke a Temporary Certificate of Approval, Child-Specific Non-Relative Certificate of Approval, or Certificate of Approval when:

"(a) The applicant or resource parent does not meet or no longer meets one or more of the certification standards in OAR 413-200-0301 to 413-200-0396[.]"

(a), (d), (k) and (j)"[2] and, on appeal, ODHS takes the position that each of OAR 413-200-0308(2)(a), (d), (j), and (k) were independent bases for it denying petitioners' application. If that is so, as ODHS argues, we need not reach the merits of petitioners' arguments on appeal because, on appeal, petitioners do not challenge ODHS's application of OAR 413-200-0308(2)(a), (d), and (j).

The difficulty with ODHS's position lies in how this case evolved. Before the administrative law judge (ALJ), ODHS argued that petitioners "demonstrated sufficient poor judgment unrelated to their religious views that, under OAR 413-200-0308(2)(a)," ODHS's denial of their application should be affirmed without the ALJ needing to reach any constitutional issues. The ALJ rejected that argument pointing to OAR 413-200-0308(2)(k) specifically, finding that petitioners' "faith-based refusal to affirm LGBTQ youth as required by OAR 413-200-0308(2)(k) was the event that ultimately triggered the Department's decision to end [petitioners'] certification process" and that "it is impossible to disentangle [petitioners'] arguments from their religious beliefs," insofar as petitioners' "protest activities, views on medical care, and difficulties engaging with Department curriculum

---

[2] OAR 413-200-0308 provides, in relevant part:

"(2) Applicants must, as determined by the Department pursuant to OAR 413-200-0274 to OAR 413-200-0298:

"(a) Exercise sound judgment and demonstrate responsible, stable, emotionally mature behavior;

"* * * * *

"(d) Maintain conditions in the home that provide for the safety, health, and well-being for the child or young adult in the care or custody of the Department and be able to meet the safety, health, attachment, and well-being needs for that child or young adult;

"* * * * *

"(j) Demonstrate an ability to learn and apply effective childrearing and behavior intervention practices focused on helping a child or young adult in the care or custody of the Department grow, develop, and build positive personal relationships and self-esteem;

"(k) Respect, accept and support the race, ethnicity, cultural identities, national origin, immigration status, sexual orientation, gender identity, gender expression, disabilities, spiritual beliefs, and socioeconomic status, of a child or young adult in the care or custody of the Department, and provide opportunities to enhance the positive self-concept and understanding of the child or young adult's heritage[.]"

all relate to their religious beliefs." Those determinations by the ALJ were later adopted by ODHS in its final order.

At bottom, given the order on judicial review and ODHS's positions throughout this litigation, we cannot tell whether OAR 413-200-0308(a), (d), and (j), represent independent bases for ODHS's denial of petitioners' application, as ODHS now contends, or whether those purported bases were, in some sense, "pretextual," as petitioners contend, because petitioners' "faith-based refusal to affirm LGBTQ youth as required by OAR 413-200-0308(2)(k) was the event that ultimately triggered the Department's decision to end [petitioners'] certification process." And without understanding the basis—or bases—for ODHS's order, we cannot meaningfully review it.

Relatedly, we note, to the extent the ALJ determined that all of petitioners' conduct that ODHS considered in evaluating their application was "impossible to disentangle" from petitioners' religious beliefs, that determination requires further explanation on remand. It is not presently apparent how or why certain conduct cannot be "disentangled" from petitioners' religious views in considering petitioners' application: for example, one petitioner's use of a racial slur; one petitioner approaching an 18 year old in a "threatening manner," and "advanc[ing] upon" the 18 year old for approximately 10 feet, while the 18 year old backed away, purportedly in order to "show his love" for the 18 year old; one petitioner's belief that "a graphic image of a dead baby" would not be "offensive to children" even though it would be "offensive to adults"; one petitioner's choice to surreptitiously place "antiabortion cards with graphic depictions of dead babies in a local grocery store," including in a "Christmas stocking," which "resulted in upsetting the child who received the stocking"; and one petitioner telling ODHS that a certain individual, the "trainer/facilitator" at a webinar titled "Understanding and Supporting Foster Youth who Identify as LGBTQIA+," was at a "counter protest" in order to "'amp up'" that petitioner and create a video to "use against [petitioners] in their effort to become foster parents" when the trainer/facilitator was not, in fact, at the counter protest.

Second, we think that it is necessary for the agency to explain its conclusion regarding petitioners' application in this case in light of the Ninth Circuit Court of Appeals decision in *Bates v. Pakseresht*, 146 F4th 772 (9th Cir 2025), which was decided while this appeal was pending. In *Bates*, the Ninth Circuit considered a plaintiff's claim that ODHS's application of OAR 413-200-0308(2)(k) "violated her free speech and free exercise rights under the First Amendment" to the United States Constitution. *Id.* at 782. ODHS had denied the plaintiff's application "to be certified as an adoptive parent of a child in foster care" under OAR 413-200-0308(2)(k) after the plaintiff, "based on her sincerely held religious beliefs, objected to using adopted children's preferred pronouns or taking them to medical appointments for gender transitions." *Id.* at 776-77. The Ninth Circuit determined that the plaintiff had "demonstrated a likelihood of success on the merits of her free speech and free exercise claims," and it directed the district court to "enter a preliminary injunction enjoining ODHS from applying [OAR] 413-200-0308(2)(k) to [the plaintiff] in deeming her ineligible for certification as an adoptive parent." *Id.* at 801.

Although *Bates* is not binding on this court, and we express no opinion on whether we agree with its reasoning, "[f]ew legal principles are so central to our tradition as the concept that courts should 'treat like cases alike,'" *Farmers Ins. Co. v. Mowry*, 350 Or 686, 698, 261 P3d 1 (2011) (quoting H.L.A. Hart, *The Concept of Law* 155 (1st ed 1961); brackets omitted), and that principle is also a "bedrock principle" of administrative law, *Univ. of Texas M.D. Anderson Cancer Ctr. v. United States Dept. of Health & Human Servs.*, 985 F3d 472, 479 (5th Cir 2021) (observing that "it is a bedrock principle of administrative law that an agency must 'treat like cases alike'" (quoting Charles Alan Wright & Charles H. Koch, 32 *Federal Practice and Procedure* § 8248, at 431 (2006)). Perhaps, as a result, "[t]he standards of review set out in ORS 183.482(8) reflect a legislative policy, embodied in the APA, that decisions by administrative agencies be rational, principled, and fair, rather than *ad hoc* and arbitrary." *Gordon v. Board of Parole*, 343 Or 618, 633, 175 P3d 461 (2007) (emphasis in original). Indeed, ORS 183.482(8)(b)(B) mandates that we remand a final order to the agency

if we find that the agency's exercise of discretion is "[i]nconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency."

In considering this case, it is impossible not to observe the similarities between the petitioners, the plaintiff in *Bates*, and ODHS's application of OAR 413-200-0308(2)(k) in both instances. Petitioners in this case, similar to the plaintiff in *Bates*, motivated by "sincerely held religious beliefs," informed ODHS that they "were not willing to use a foster child's chosen pronouns if inconsistent with the foster child's gender assigned at birth"; petitioners in this case, motivated by "sincerely held religious beliefs," would refuse—as phrased by ODHS—"to allow a foster youth to obtain medical and mental health treatment consistent with LGBTQ identity," while the plaintiff in *Bates* told ODHS that she would not take a child to "medical appointments for gender transitions"; and in this case and in *Bates*, OAR 413-200-0308(2)(k) appears to have, at a minimum, served as *a* basis for ODHS's decision-making. For that reason, we conclude that remanding to the agency to reconsider its decision in view of *Bates* is appropriate.

We emphasize that our opinion should not be read as putting a judicial thumb on the scale as to the outcome on remand. Although, as noted, petitioners bear some similarities to the plaintiff in *Bates*, there are other historical facts at play in this case concerning petitioners that, from what we can tell, may not map on to the circumstances in *Bates* well.

In sum, we reverse and remand in this case for two reasons. First, the basis for ODHS's conclusion in the order that "[t]he Department may deny [petitioners'] application for a child-specific certificate of approval or a certificate of approval to operate a foster home to provide care for a child or young adult in the care or custody of the Department" is unclear, preventing meaningful judicial review. And second, so that the agency can reconsider its conclusion regarding petitioners' application in light of *Bates*.

Reversed and remanded.